[No. 26470. Department Two. May 6, 1937.]

EDNA C. McGRAIL, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 67 P. (2d) 851.

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Albert H. Solomon,* for respondent.

STEINERT, C. J.—This is an appeal by the department of labor and industries from a judgment of the superior court directing the allowance of a claim for a widow's pension in accordance with the provisions of the workmen's compensation act.

Respondent begins her brief with a motion to dismiss the appeal or, in the alternative, to strike the statement of facts, upon the ground that no abstract of the record has been served or filed. Rule VI of rules of the supreme court, found in 159 Wash. p. xxxv, provides that, when the statement of facts contains over one hundred pages, an original and two legible copies of a typewritten abstract of the record shall be filed with the clerk of this court. That rule was amended March 1, 1935, by adding thereto a provision that it shall not be necessary to abstract the pleadings. Rule VI, as amended, 178 Wash. p. xxxv.

In this case, the statement of facts, so designated, consists of twenty-four pages of argument by counsel and a reading reference to about forty pages of a 107-page departmental record.

If the matter be viewed solely from the standpoint of the length of the statement of facts, no abstract would be required at all. If it be viewed from the standpoint of the departmental record, which contains all the testimony, there would be an excess of only seven pages over the limit prescribed.

Respondent's motion was made, for the first time, in her brief on appeal. Under our rulings upon similar sets of circumstances, the motion was not timely and did not constitute the appropriate remedy. *Schirmer v. Nethercutt,* 157 Wash. 172, 177, 288 Pac. 265; *Olympia Brewing Co. v. Northwest Brewing Co.,* 178 Wash. 533, 35 P. (2d) 104.

The motion will be denied and the case considered on its merits.

On and prior to May 10, 1934, the state highway department was engaged in road construction and maintenance work on state road No. 2 between Virden and Mountain Home. Between these points, the highway department maintained a rock crusher, from which the rock, when crushed, was hauled in trucks and distributed at various places along the road wherever necessary. The rock crusher was located at a point approximately thirty miles northwest of Ellensburg and fifty miles southwest of Wenatchee. In connection with the work, the highway department operated a number of trucks of its own. It also had an arrangement under which it hired several trucks from various individuals working on the job.

The trucks were operated continuously from six o'clock in the morning until two o'clock the following morning, a period of twenty hours, divided into four shifts of five hours each.

The men operating the trucks each worked one shift of five hours a day, thus requiring a series of drivers for each truck. Under the arrangement just

referred to, the highway department paid the workmen sixty-two and one-half cents an hour for the time that they drove the trucks and, in addition thereto, one dollar and fifty cents an hour for the use of their trucks while in operation. The highway department paid for the gas and oil used, but the several truck owners were required to keep their trucks in proper condition mechanically, furnishing all equipment, making all necessary repairs, and assuming all depreciation. Foremen in the employ of the highway department superintended the operation of the trucks, kept a check on their condition, and, whenever a truck was not operating properly, were authorized to discontinue its use until it had been reconditioned.

The work for which the men were employed was not for any specified length of time, nor did it involve the hauling of any specified amount of rock. The arrangement between the highway department and the owners of the trucks could be terminated by either or any party at any time.

Delbert M. McGrail, now deceased, formerly the husband of respondent, owned a Kenworth truck and was employed by the highway department upon the particular job, under the arrangement just described. McGrail's work shift was from six a. m. to eleven a. m., during which time he drove his own truck. Other drivers, employed by the highway department, operated the truck during the other three shifts. The truck was greased and oiled and tires changed as occasion required. Any repairs that were necessary upon the truck were made by McGrail after he had completed his driving shift ending at eleven a. m.

Mr. McGrail also owned a small Ford car which he used in going to and from his home in Seattle on week ends and also in getting equipment, tools, and repair parts for his particular truck.

On May 10, 1934, two of the tires on the McGrail truck were in poor condition and required replacement within a short time; a third tire had been replaced by one recently borrowed for temporary use from the owner of one of the other trucks. The valves of McGrail's truck also needed grinding. The truck, however, was, at that time, continuously in operation on the job.

During the afternoon of May 10th, and after he had completed his driving shift, McGrail drove to Ellensburg in the Ford car and there procured some tools with which to grind the valves of his truck. After returning to the rock crusher, he started for Wenatchee accompanied by one of the truck drivers who was then off duty. This was at about nine p. m. The court found that the purpose of the trip to Wenatchee was to procure tires for the McGrail truck. The road between the rock crusher and Wenatchee was mountainous and for some distance was under repair, but was fairly passable.

At a point where there was a sharp curve in the road, the car was either forced, or else ran, off the highway, over a forty-foot declivity. McGrail and his companion were both killed, their bodies being discovered the following day. There were no eye-witnesses to the accident.

In the meantime, the McGrail truck had been kept in operation on the job. Several days after Mr. McGrail's death, his widow, respondent, purchased two tires at Seattle and had them put on the truck, thus enabling it to continue with the work until the job was completed about a week later. The valves of the truck were not ground until after the job had ended.

Shortly after the death of her husband, respondent filed with the department of labor and industries her claim for a widow's pension. The supervisor and the

joint board, in turn, rejected the claim on the ground that the deceased was not, at the time of his death, in the course of his employment, within the meaning of the workmen's compensation act.

While there are several assignments of error asserted by appellant, the only question that need be discussed is whether the deceased, at the time of his death, came within that provision of Rem. Rev. Stat., § 7675 [P. C. § 3470], which provides:

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: . . ."

■ It is now the settled doctrine of this state that an injured employee, in order to come within the protection of the statute just quoted, must, at the time of his injury, have been in the course of his employment, whether on or off the premises of his employer. *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655; *Haaga v. Saginaw Logging Co.,* 165 Wash. 367, 373, 5 P. (2d) 505; *Blankenship v. Department of Labor & Industries,* 180 Wash. 108, 39 P. (2d) 981; *Carter v. Department of Labor & Industries,* 183 Wash. 86, 92, 48 P. (2d) 623.

The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interests. *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 288 Pac. 655; *Hilding v. Department of Labor & Industries,* 162 Wash. 168, 298 Pac. 321; *Burchfield v. Department of Labor & Industries,* 165 Wash. 106, 4 P. (2d) 858;

*Hobson v. Department of Labor & Industries,* 176 Wash. 23, 27 P. (2d) 1091; *Morris v. Department of Labor & Industries,* 179 Wash. 423, 38 P. (2d) 395.

It has also been established in this state that one who contracts to furnish to another his own truck in connection with his personal services, in extrahazardous employment, at a rate of compensation covering the use of the truck as well as his services and to be paid on a time basis, is eligible to the protection of the workmen's compensation act. *Burchett v. Department of Labor & Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; *MacKay v. Department of Labor & Industries,* 181 Wash. 702, 44 P. (2d) 793. This is upon the theory that such person is an employee, rather than an independent contractor.

These rules and principles have now been definitely established and accepted in this state. The only problem attendant upon them is in their application to variant states of fact. The case before us is not without its difficulty in that respect, particularly so when compared and contrasted with the case of *MacKay v. Department of Labor & Industries,* just cited.

In that case, MacKay was employed by a contractor to do certain work upon a county road. The employment involved the use of a caterpillar engine owned by MacKay and also his personal services in connection therewith. MacKay was paid for his time and the use of the caterpillar at the rate of two dollars an hour. The employer was to furnish the gasoline required to operate the caterpillar, but the compensation of two dollars an hour took into account the wear and tear and the expense involved in making the casual repairs necessarily incident to the operation of the machine. During the time that MacKay was engaged in the prosecution of his work, the caterpillar became disabled by the breaking of one of its parts. As dis-

closed by the record in that case, the court therein found that, while MacKay was operating the caterpillar on the particular job, the cylinder head cracked, and, in order to continue the road work, it was necessary that the broken part be repaired. The nearest place where repairs could be had was at Shelton, to which place MacKay brought the broken part in his automobile. Upon entering the garage where the repair was to be made, he slipped and fell on the concrete floor, sustaining the injury for which compensation under the industrial insurance act was sought.

In upholding the claim, on reversal of the decision of the joint board, this court held that the manner of payment was not determinative of the status of the employee. The gist of the opinion, upon the question here involved, is found in a paragraph containing the following language:

"The caterpillar became disabled on the job. The job was to be done. The claimant did the natural and proper thing in taking the disabled part at once to the nearest place where it could be repaired to enable him, as speedily as possible, to do the work for which he was hired. We think this was incidental to his employment, even though the aggregate amount of his pay was to be determined by the time during which the machine was in operation."

The statement just quoted reveals a distinction between that case and this. In addition, there are other points of difference in the two cases which are material to our present solution. We shall consider all these differences in connection with each other.

In the *MacKay* case, there was but one contract, or a contract with a single basis of compensation, namely, two dollars an hour for man and machine. The machinery involved was used exclusively by the particular employee, that is to say, his personal services and the use of the machine formed a single unit of

employment and compensation. In the performance of the work, the machine suddenly became disabled, putting it temporarily out of commission and arresting further work by the employee. The job had to proceed and its ready completion was dependent on the repair of the machine. It was necessary to take the disabled part of the truck at once to the nearest repair shop, which was done. The work of repair was necessarily and intimately incident to the employment. All this appears from the opinion in that case.

In the case before us here, the contract was dual in its nature. One part of the contract had reference to the personal services of the employee, and the other had reference to the hiring of his truck. So far as compensation was concerned, the two elements had no connection with each other. For his personal services, McGrail received exactly the same wage as that received by those workmen who did not furnish trucks. For the use of his truck, McGrail was paid on a basis of the time of its operation, whether driven by him or by some other employee of the highway department.

Although McGrail was required to make repairs and keep the truck in proper operating condition, those duties were to be performed by him at times when he was off shift, and strictly as a part of his contract to furnish and maintain the truck. In that respect, he was in no different situation than he would have been had he not been otherwise employed by the highway department, nor in any different situation from that occupied by one who simply rented trucks to that department for use by it on the job.

Moreover, McGrail's truck was never out of commission but was continuously in operation. An emergency was not presented requiring immediate attention in order to prosecute the work. The grinding of the valves involved an errand with which we are not

now concerned, inasmuch as that errand had been completed. In any event, the valves were not ground until after the job had ended. The tires, which occasioned this controversy, were a part of the equipment which McGrail was obviously required to replace from time to time, thus suggesting the necessity of having extras conveniently at hand. In this instance, at least, the tires had not suddenly collapsed or been rendered utterly useless, but were simply in the final stages of deterioration, calling for replacement at the earliest convenience. Their immediate condition, however, did not interrupt the use of the truck, nor lessen the compensation paid therefor.

The two cases are thus clearly distinguishable in several points of fact, and those distinctions, in our opinion, call for different results. But we rest our conclusion herein more particularly and with complete decisiveness upon the ground that the furnishing of the tires was related to a contract of truck hiring and not to a contract of employment, and that, when McGrail undertook the journey to Wenatchee to procure tires, he was not doing so in furtherance of his employer's interests, but solely in furtherance of his own interests as the owner and hirer of the truck. He was, therefore, not a workman in the course of his employment, within the meaning of the statute.

The judgment is reversed.

TOLMAN, MILLARD, and ROBINSON, JJ., concur.

HOLCOMB, J. (dissenting)—The motion to dismiss the appeal or to strike the statement of facts is properly determined by the majority.

On the merits, I am unable to concur with the prevailing opinion. In my view, there is no rational distinction between the controlling facts as set out by the majority and the decision in the *MacKay* case (181

Wash. 702, 44 P. (2d) 793). If there is any distinction, it is favorable to the decision of the trial court in this case.

The facts are correctly stated in the prevailing opinion, and from the statement it appears that Mc-Grail hired himself and his truck to the state. The truck received much more service than McGrail and was therefore to be much more greatly compensated. There is no difference, however, between hiring one's self and one's truck to another, or hiring one's self and a wagon and team, or an ordinary shovel. If the wagon and team or the shovel should be paid for when in use by other workmen under their contract and the owner should keep it in repair, as was the case here, then certainly the owner was in the course of his employment when he went for the purpose of securing repairs to the thing he was obligated to keep in repair.

As stated by the majority, the purpose of the trip to Wenatchee was to procure tires for the McGrail truck. It was necessary for the tires to be kept in repair or the truck would be left off the job. That would certainly decrease McGrail's compensation. Hence, it cannot be said that there was no connection between the contract for the personal services of the employee and that for the hiring of his truck.

Although we have sometimes said that the meaning of the term "course of employment" is to be liberally construed (*Wabnec v. Clemons Logging Co.*, 146 Wash. 469, 263 Pac. 592), it would seem that that rule is observed in some cases and disregarded in others. We should be consistent.

Wabnec, in the last cited case, was injured in the course of his employment, although he had not yet commenced work, but was on his way to camp where his services were to begin. Hilding, in *Hilding v. De-*

*partment of Labor & Industries,* 162 Wash. 168, 298 Pac. 321, who was returning to the state after performing certain work and was accidentally killed in Idaho, was in the course of his employment; Burchfield, in *Burchfield v. Department of Labor & Industries,* 165 Wash. 106, 4 P. (2d) 858, a workman driving his own automobile from one port to another so as to engage in the work of loading a ship owned by his employer, was in the course of his employment; and if MacKay, in the case discussed in the prevailing opinion, was in the course of his employment, then most assuredly was McGrail.

The prevailing opinion ignores the test stated therein in the following language:

"The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interests."

The cases cited in respect to that test state the true rule in this state.

The judgment should be affirmed.