[No. 30467. *En Banc.* November 18, 1948.]

ALEX CUGINI, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 199 P. (2d) 593.

*The Attorney General* and *Phil H. Gallagher, Special Assistant,* for appellant.

*Little, Leader, LeSourd & Palmer* (*Clyde R. Maxwell, Jr.,* of counsel), for respondent.

MILLARD, J.—Helge Olson went to work August 19, 1946, for Alex Cugini, who was engaged in the logging and trucking business, and was steadily employed at Alder lake, near Elbe, Washington, until September 18, 1946, when he was injured by the explosion of dynamite caps. Before he was employed by Cugini, Olson acquired logs for himself, which were located at the site of his employer's operations. He lived in a shack, or small floathouse, on a logging boom near the place of operations, where he had resided some time prior to his employment by Cugini. Olson worked regular hours from eight a. m. until four-thirty p. m., at various tasks, mostly loading logs, but also as a boomman, for which he received wages of fifteen dollars a day.

About eight a. m., September 18, 1946, prior to the time the men commenced the work of loading logs, Cugini's foreman placed a charge of dynamite to blow a stump out of the boom. The men worked until four-thirty that afternoon and then went—Olson accompanied them—to the town of Elbe. Olson returned to his floathouse about six o'clock that evening.

About seven p. m., several persons heard the sound of an explosion, which it was later learned resulted in serious injuries to Olson. The details of just what occurred do not appear to be definitely known by anyone, including Olson, who testified that he did not know what happened. It was his recollection that he returned from Elbe, after working-hours, to his boathouse, took several sticks of dynamite from a supply stored either in his boathouse or in front of it, and made up a charge, which he intended to use in blowing a stump out of the boom of logs. The explosion occurred at

the back end of his floathouse, on the opposite side from the stump "that was blown that morning."

There is no evidence to sustain the report of the accident, which was not signed by Olson. In that report, it is stated that Olson was working as watchman, putting dynamite caps away in the floathouse, when the lamp in that house commenced to spill gasoline; that Olson picked up the caps to take them outside his cabin, and in so doing stumbled and fell. The occupation of Olson is shown in the report as that of boomman.

Olson testified that one of the reasons Cugini employed him was because he lived at the site of the logging and trucking operations, and the employer desired someone who lived there in order to prevent thefts, and that he actually watched people who came around the place of operations.

Olson's claim for compensation, under the workmen's compensation act, was allowed by the supervisor of industrial insurance. Rehearing by the joint board of the department of labor and industries, on petition of employer Cugini, resulted in entry of an order sustaining the supervisor. The employer appealed to the superior court for King county. The cause was tried to the court, sitting with a jury. The joint board record was read in evidence. The jury returned a verdict in favor of the department and the claimant. The employer's motion for judgment notwithstanding the verdict, on the ground that the claimant was not injured while in the course of his employment, was granted, and judgment was entered accordingly. The department appealed.

■■ Unless we can say as a matter of law that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict that claimant was in the course of his employment at the time he was injured, the question whether the trial court properly granted judgment *non obstante veredicto* must be answered in the negative.

"It is the firmly established rule that a motion for judgment notwithstanding the verdict involves no element of discretion and will not be granted unless the court can say, as a matter of law, that there is neither evidence nor reason-

able inference from evidence sufficient to sustain the verdict. [Citing cases.]

"In ruling on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made, and all material evidence favorable to the contention of the party benefited by the verdict must be taken as true. [Citing cases.]

"If there is substantial evidence supporting the verdict of the jury, as distinguished from a mere scintilla of evidence, the verdict must stand. [Citing cases.]

"By 'substantial evidence' is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *Omeitt v. Department of Labor & Industries,* 21 Wn. (2d) 684, 152 P. (2d) 973.

In *D'Amico v. Conguista,* 24 Wn. (2d) 674, 167 P. (2d) 157, we recited the definite conditions which must exist at the time of an injury in order to entitle one to the benefits of the workmen's compensation act. We said:

"First, the relationship of employer and employee must exist between the injured person and his employer (except in some cases where the injured person is an independent contractor); second, the injured person must be in the course of his employment; third, that the employee must be in the actual performance of the duties required by the contract of employment; and, fourth, the work being done must be such as to require payment of industrial insurance premiums or assessments. . . .

"This court has repeatedly held that the test of the relationship of employer and employee is the right of control on the part of the employer over the employee. [Citing cases.]

"This rule is easily applied to any case of this nature. There is a definite line which can be drawn between working for an employer and the use of time by an employee for his own purposes."

In *Young v. Department of Labor & Industries,* 200 Wash. 138, 93 P. (2d) 337, 123 A. L. R. 1171, we announced our adoption of the test for determining whether an employee is, at a given time, in the course of his employment. We held that, unless the employee was, at the time, engaged in the performance of the duties required of him by his

contract of employment or by specific direction of his employer, "or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest," he was not in the course of his employment.

■ It is clear that, if we apply the foregoing principles to the facts in the case at bar, the trial court correctly granted the motion for judgment notwithstanding the verdict. There is no substantial evidence, nor is there evidence from which it may be reasonably inferred, that, besides his regular hours of employment, claimant Olson was also to act as a night watchman, and that he was injured while so acting. Claimant was not directed to place a dynamite charge in order to blow a stump out of the boom. Claimant testified respondent informed him that he desired the services of claimant, as he would be in a position to notice when anyone was around the site of the operations, and that, when he noticed anyone after working hours, he simply watched them.

Up to about a week prior to the accident, the claimant had been gathering his own logs at night, and would sell them to a certain contractor. Even if the fact, if it be a fact, that claimant's residence at the site of the logging operations of respondent was a consideration for his employment by respondent, there is no mention in the contract of employment of any specific duties claimant owed to his employer, other than to work the regular hours from eight a. m. to four-thirty p. m., the same as any other member of the crew engaged in the same operation.

■ That is to say, at the time (after working hours) of his injury, the claimant was not engaged in doing anything required of him by his contract of employment, or by specific direction of his employer. If it be assumed—there is an absence of evidence on this point—that Olson made up a charge of dynamite and took it out of his cabin with the intention of blowing a stump out of Cugini's boom, he was acting as a mere volunteer.

■ If claimant Olson was employed as a watchman, he was not acting in the course of his employment by going out to dynamite a stump after hours. The blasting of stumps

is in no sense a part of the duties which were required of the claimant as a night watchman.

Admitting, *arguendo,* that the dynamite was stored by respondent in the boathouse of claimant Olson, who was made custodian of the explosive, Olson was not injured while in the course of his employment as custodian. It was not one of his duties as custodian or as watchman to remove at that time any of the dynamite from the boathouse where same was stored and make up a charge for use in blowing a stump out of the boom of logs. The explosion occurred outside of the boathouse. Olson was not, at the time he was injured, in the actual performance of duties required by his contract of employment with respondent.

As claimant Olson was not, at the time he was injured, in the actual performance of any duty required by his contract of employment with respondent, the judgment should be, and it is, affirmed.

BEALS, STEINERT, ROBINSON, SIMPSON, JEFFERS, SCHWELLENBACH, and HILL, JJ., concur.

MALLERY, C. J. (dissenting)—The employer had an occasional need to use dynamite. That dynamite is a dangerous instrumentality and must be specially stored, should not be subject to controversy. I believe further that one charged with the storage of such an instrumentality has a responsibility through every hour of the day, and that the question of being in the course and scope of his employment in connection with the storing of dynamite is not subject to any of the line of cases in which the time element has been decisive of the question.

If it be granted that the claimant was in the course of his employment because his custody of the dynamite was continuous, then the question of exactly how the accident occurred is of no more importance than would be the question of negligence. I dissent.