[No. 34445. Department Two. October 16, 1958.]

THOMAS G. GORDON *et al.*, *Appellants*, v. ARDEN FARMS
COMPANY, *Respondent*.[1]

[1]Reported in 330 P. (2d) 561.

*Erik Froberg* and *Kahin, Carmody & Horswill*, for appellants.

*Elliott, Lee, Carney & Thomas* (*Millard C. Thomas*, of counsel), for respondent.

HILL, C. J.—The trial court granted a summary judgment of dismissal in a personal injury action, for the reason that such an action could not be maintained by an employee covered by the workmen's compensation act against her employer for an injury sustained in the course of her employment. The plaintiffs appeal.

The sole issue is whether Elvira Gordon, who will be referred to as though she were the only plaintiff and appellant, was in the course of her employment at the time she sustained her injury. If she was, the trial court was clearly right, as she then had no alternative except to take under the workmen's compensation act. *Rector v. Cherry Valley Tbr. Co.* (1921), 115 Wash. 31, 196 Pac. 653, 13 A. L. R. 1247. If she was not, she was entitled to wage her

action against her employer, Arden Farms Company, hereinafter referred to as Arden; and the trial court erred in dismissing her action.

Mrs. Gordon has not overlooked the possibility that her remedy may be under the workmen's compensation act. She has filed a claim with the department of labor and industries, which has been rejected. Both Mrs. Gordon and her employer have appealed from that rejection to the board of industrial insurance appeals, contending that this injury is covered by the workmen's compensation act. While apparently an inconsistent position on the part of Mrs. Gordon, it is necessary that she preserve her rights under that act, should it be determined that she cannot maintain this action. The appeal to the board of industrial insurance appeals is held in abeyance pending our decision in this case.

Mrs. Gordon operated a machine which sacked ice cream bars, popsickles, and similar products. She worked a shift from 3:30 p. m. to midnight, with a thirty-minute lunch period and two fifteen-minute rest periods.

She was paid at a certain rate per eight-hour day, and any time she reported for work, if she worked four hours or less, she was paid for a half day; and, if she worked over four hours, she was paid for a full day. Overtime was computed on an hourly basis.

Before reporting for work, Mrs. Gordon was required to don a uniform, or coverall, provided and laundered by Arden. These were placed in a lounge and rest room maintained for the female production employees, and each employee selected her own uniform.

On the day Mrs. Gordon sustained her injury, she had donned her uniform and was on her way downstairs from the lounge and rest room to punch the time clock and go to work; the approximate time of her fall was 3:25 p. m., and she was supposed to be at her machine at 3:25 p. m., to take over the operation of that machine from the woman who was operating it on the shift which went off at 3:30 p. m.

We are required to determine whether we can say, as a matter of law, that an employee engaged in extrahazardous

industry, and injured under such circumstances, is within the course of her employment before she has actually commenced to operate the machine, which she is employed to operate and the operation of which constitutes the basis of her compensation.

We have applied certain standards to this type of case, and have recently reiterated previous statements, that for an injured person to come under the protection of the act the following conditions must be met: (1) the relationship of employer and employee must exist between the injured person and his employer (with certain exceptions not here material); (2) the injured person must be in the course of his employment; (3) the injured person must be in the actual performance of the duties required by the contract of employment; (4) the work being done must be such as to require the payment of industrial insurance premiums or assessments. *Tipsword v. Department of Labor & Industries* (1958), 52 Wn. (2d) 79, 323 P. (2d) 9, and cases cited therein.

Some comment relative to the clarification of these conditions must be made, particularly with reference to the third and fourth. Most of our discussion will be with reference to the third condition, so we will first make a brief comment on the fourth.

The employer is required to "pay" a certain number of cents for each man-hour worked by the workmen in his employ engaged in extrahazardous employment. RCW 51.16.010. This does not mean, as plaintiff-appellant urges, that an industrial insurance premium must be due covering the exact moment of the injury. A more accurate statement would be: the work which the injured person is employed to do must be for an employer who is required to pay industrial insurance premiums or assessments covering that work. *Bridges v. Department of Labor & Industries* (1955), 46 Wn. (2d) 398, 281 P. (2d) 992; *Pearson v. Aluminum Co. of America* (1945), 23 Wn. (2d) 403, 161 P. (2d) 169, and cases cited.

The second condition (the workman must be in the course of his employment) is statutory, and is, in the words of the workmen's compensation act itself,

" . . . 'Workman' means every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise *in the course of his employment* . . . " (Italics ours.) RCW 51.08.180.

" . . . Each workman injured *in the course of his employment* . . . shall receive out of the accident fund compensation in accordance with this chapter . . . " (Italics ours.) RCW 51.32.010.

 In defining the "course of his employment," we have very frequently held that if the employee was acting at his employer's direction, or in furtherance of his employer's business, he was in the course of his employment. *Tilly v. Department of Labor & Industries* (1958), 52 Wn. (2d) 148, 324 P. (2d) 432; *Lunz v. Department of Labor & Industries* (1957), 50 Wn. (2d) 273, 310 P. (2d) 880; *Cugini v. Department of Labor & Industries* (1948), 31 Wn. (2d) 852, 199 P. (2d) 593; *D'Amico v. Conguista* (1946), 24 Wn. (2d) 674, 167 P. (2d) 157; *Young v. Department of Labor & Industries* (1939), 200 Wash. 138, 93 P. (2d) 337, 123 A. L. R. 1171; *McGrail v. Department of Labor & Industries* (1937), 190 Wash. 272, 67 P. (2d) 851; *Hobson v. Department of Labor & Industries* (1934), 176 Wash. 23, 27 P. (2d) 1091; *Morris v. Department of Labor & Industries* (1934), 179 Wash. 423, 38 P. (2d) 395; *Burchfield v. Department of Labor & Industries* (1931), 165 Wash. 106, 4 P. (2d) 858; *Hilding v. Department of Labor & Industries* (1931), 162 Wash. 168, 298 Pac. 321.

 And it is not necessary that at the time the injury is sustained he be doing the work on which his compensation is based, or that the event be within the time limits on which industrial insurance premiums or assessments are paid. *Pearson v. Aluminum Co. of America, supra; Young v. Department of Labor & Industries, supra; Wood v. A. H. Chambers Packing Co.* (1937), 190 Wash. 411, 68 P. (2d) 221; *Venho v. Ostrander R. & Tbr. Co.* (1936), 185 Wash. 138, 52

P. (2d) 1267; *White v. Shafer Bros. Lbr. & Door Co.* (1931), 165 Wash. 298, 5 P. (2d) 520; *Wabnec v. Clemons Logging Co.* (1928), 146 Wash. 469, 263 Pac. 592.

The so-called third condition, that the injured person must be in the actual performance of the duties required by the contract of employment, has no statutory basis, and has been formulated by the court in its attempts to clarify what is meant by the words "course of his employment." In many cases it is an appropriate but not a conclusive test by which to determine whether an injured person was in the course of his employment, but it is not an additional condition to the injured workman coming under the act.

If interpreted literally, and applied, as appellant seeks to apply it here, it would be in conflict with many of the cases which are heretofore cited, and with our recent "horseplay" case, *Tilly v. Department of Labor & Industries, supra.* See, also, *Bice v. Anderson* (1958), 52 Wn. (2d) 259, 324 P. (2d) 1067.

The first time that we used the language, which has come to be referred to as the "third condition," was in *McGrail v. Department of Labor & Industries, supra,* where we said:

"The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interests."

It is there made clear that it is one of several tests for determining what is the "course of his employment," such as whether he was acting at the specific direction of his employer, or whether he was engaged in the furtherance of his employer's interests.

We again used the phrase, now known as the "third condition," in *Young v. Department of Labor & Industries, supra,* the first of the lunch-hour cases; but we there used the same statement we have quoted, *supra,* from the *McGrail* case. We also made it clear that it is some act that has no relation

to the employer's interests which puts the employee, once within the course of his employment, without the course of that employment. We say (p. 145),

"The theory of the cases is that a period of rest, refreshment, or other temporary cessation from work, is not of itself sufficient to break the continuity of employment, but that the independent act of the employee, which has no relation to the employer's interest, serves to break the so-called nexus and to put the employee without the course of his employment.

"In this case, it is manifest that appellant's venture had no connection whatever with his meal. He was not seeking a place where he might eat, nor was he returning to work from a place where he had eaten. He had finished his lunch without any mishap and had entered upon a wholly separate and distinct undertaking. When he began his exploration of the interior of the dam, he was not under the supervision or control of his employer, but was on his own time. He was not then engaged in the performance of any of his obligatory duties or anything incident to them. He was not performing a task in furtherance of his employer's work or interest, but was engaged in a voluntary exploration of his own conception. We are satisfied that appellant was not in the course of his employment, within the meaning of the workmen's compensation act."

The so-called "third condition" is first stated as an independent condition necessary to bring the workman within the protection of the workmen's compensation act in *D'Amico v. Conguista, supra,* and is repeated in the following cases: *Tipsword v. Department of Labor & Industries, supra; Tilly v. Department of Labor & Industries, supra; Bridges v. Department of Labor & Industries, supra; Cugini v. Department of Labor & Industries, supra; Scobba v. Seattle* (1948), 31 Wn. (2d) 685, 198 P. (2d) 805; *Mutti v. Boeing Aircraft Co.* (1946), 25 Wn. (2d) 871, 172 P. (2d) 249; *Purinton v. Department of Labor & Industries* (1946), 25 Wn. (2d) 364, 170 P. (2d) 656.

Without attempting an analysis of these cases, and with no reflection upon the propriety of the result in any of them, we are satisfied that if by any standard recognized by this court an injured person meets the statutory test of being "in

the course of his employment," this court cannot by sheer repetition add a further condition that requires the worker to be not only in the course of his employment, but also to be engaged in the performance of duties required of him by his contract of employment. We, at the risk of being repetitious, again point out that the so-called "third condition" is but one of several recognized tests and not an exclusive one, for determining when an injured person is in the course of his employment.

In the present case, Mrs. Gordon was required by her employer to report to a particular place, the ladies' rest room and lounge, for the purpose of securing a uniform, and she would not have been permitted to go to work without it. Clearly, in reporting to the lounge and putting on the uniform, she was acting at the direction of her employer. She was descending a flight of stairs for the express purpose of punching a time clock and reporting to her machine to go to work, certainly necessary incidents to her employment after putting on her uniform.

It seems equally clear that the things she was required to do were in furtherance of her employer's interests. We have frequently, without any reference to the so-called "third condition," held that if an employee was acting at his employer's direction or in furtherance of his employer's interests, he was in the course of his employment. *Hobson v. Department of Labor & Industries, supra; Morris v. Department of Labor & Industries, supra; Hilding v. Department of Labor & Industries, supra; Burchfield v. Department of Labor & Industries, supra; White v. Shafer Bros. Lbr. & Door Co., supra.*

We would have no hesitancy, under such circumstances, if the only issue was whether Mrs. Gordon came under the workmen's compensation act, in holding that Mrs. Gordon was in the course of her employment when injured, and was entitled under that act to such medical aid and time loss as her injuries warranted—together with compensation for disability, permanent or partial.

We assume that the same standards must be applied where

an employee is claiming coverage and seeking benefits under the workmen's compensation act, which is the usual situation; and where an employee wants to sue his or her employer and is, therefore, urging that there is no coverage under the act, and that he or she is entitled to no benefits under the act, which is the present situation.

■ We are satisfied that where an employee is required to don a uniform before reporting to work, that uniform being furnished by the employer and kept on the premises of the employer, that at least from the time he begins to put on that uniform preparatory to going to work he is in the course of his employment, and what he is doing is in furtherance of the interests of his employer. Applying that rule to the instant case, we find that from the time Mrs. Gordon commenced to don her uniform, until she fell on the stairs and sustained her injury, she did nothing but what she was required and expected to do as an employee of Arden. She did nothing to break the continuity of her employment.

She urges that the other women employed in the same or similar capacity frequently put on their uniforms, then go across the street to get a cup of coffee before punching the time clock, and that, consequently, she could not be said to be in the course of her employment until she actually reported for work.

The argument is a *non sequitur*. It will be conceded that, to quote the *Young* case, *supra*, some "independent act of the employee, which has no relation to the employer's interest," and is solely for the employee's benefit, may serve "to break the so-called nexus and to put the employee without the course of his employment."

No such independent act has been alleged here. The record is that she donned her uniform, and went down the stairs to punch the time clock and to go to work. Whether the course of her employment began when she entered her employer's building, or when she entered the portion of the premises reserved for employees, we do not need to determine. The putting on of the required uniform in a place

provided for that purpose seems to us an inescapable beginning point. Nothing breaks the continuity of the employment from the time she commenced to put on her uniform.

Appellants rely heavily on *McCarty v. King County Medical Service* (1946), 26 Wn. (2d) 660, 175 P. (2d) 653, which is readily distinguishable. There, the plaintiff, an elevator operator in an office building, had gone into the lobby of the building some fifteen minutes before she was scheduled to report for work. Before she fell down the elevator shaft, she had been no place in the building where any member of the public could not have gone, and had done nothing that any member of the public could not have done; she had done nothing that in any way differentiated her from any member of the public. There was nothing to mark the beginning of the course of her employment prior to her injury.

We are satisfied that the trial court was correct in concluding that Mrs. Gordon was in the course of her employment when injured; that she was, therefore, entitled to benefits under the workmen's compensation act, and that she had no cause of action against her employer for his alleged negligence. The summary judgment of dismissal is affirmed.

Donworth, Weaver, Rosellini, and Foster, JJ., concur.