[No. 39759.   En Banc.   December 11, 1969.]

*In the Matter of* LYNETTE J. HAMILTON.
LYNETTE J. HAMILTON, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*\*

*The Attorney General, Robert G. Swenson, Assistant, Holman, Marion, Perkins, Coie & Stone,* and *Fred S. Merritt,* for appellants.

\*Reported in 462 P.2d 917.

*Schroeter & Jackson,* by *Chas. H. W. Talbot* and *Lembhard G. Howell,* for respondent.

HAMILTON, J.—Respondent appealed to the superior court from an order of the Board of Industrial Insurance Appeals rejecting her claim for benefits under the workmen's compensation act. The Board predicated the denial upon its conclusion that respondent, engaged in going to her place of work at the time of injury, was not injured in the course of her employment. The superior court, sitting without a jury, entered findings of fact, conclusions of law, and judgment reversing the board's order and remanding the cause to the Department of Labor and Industries for further proceedings. The department and respondent's employer, The Boeing Company, appeal.

The facts are virtually undisputed and the only issue arising therefrom concerns itself with whether respondent, at the time of her injury, was "acting in the course of employment" as that phrase is defined in RCW 51.08.013.

At the time of respondent's injury, and for some years prior thereto, her employer, Boeing, was engaged in the performance of a contract with the United States Air Force relating to the Minute Man Missile project. To carry out its duties under the contract, Boeing was allocated and occupied several buildings in the United States Naval Supply Depot complex at Pier 91, Seattle, Washington. This complex was diagonally bisected by a public street, Lawton Way, and adjacent and paralleling spur tracks of the Northern Pacific Railroad Company. The buildings occupied by Boeing, as well as other buildings not so occupied, were located within fenced compounds, lying northeasterly and southwesterly of the street and railroad trackage. In the performance of its contract, Boeing did not have occasion to utilize rail transport over the spur tracks.

In addition to the buildings, Boeing was also allocated sufficient parking areas within and without the fenced compounds to accommodate 200 automobiles. Boeing, in turn, assigned use of the parking areas lying within the fenced

compounds to executive and supervisory personnel and the areas lying immediately outside the fenced compounds, but adjacent to and northeasterly of Lawton Way, to nonsupervisory employees. Entry to the fenced compounds from these latter parking areas, as well as convenient access from one compound to the other, was gained by way of two gates, opposite one another, in the respective fences adjacent to the street and railroad trackage. These gates were wide enough to permit automotive traffic and the entrances through the gates from Lawton Way were macadamized. The intersection so formed, however, was uncontrolled at the time in question, and the area of the railroad crossing was torn up and undergoing repair.

Respondent was employed as a graphic illustrator—a nonsupervisory position—and performed a substantial portion of her duties in a building situated in the compound lying southwesterly of the street and trackage, although she was occasionally required during her working day to go to buildings within the northeasterly compound. Being a nonsupervisory employee it was necessary, in coming to work by automobile, for her to park in the parking area immediately north and east of Lawton Way and walk from there across Lawton Way and the railroad trackage to enter the southwesterly compound gate and reach the building in which her workday commenced. Likewise, in going from one compound to the other during the course of her workday, and in leaving after work, she was required to traverse, on foot, the trackage and Lawton Way. Whatever the occasion, the route she followed was the most convenient and the one customarily followed by employees similarly situated, all with the knowledge and acquiescence of Boeing.

On the morning respondent was injured she arrived at the parking area, in keeping with her usual practice, approximately 10 minutes before she was scheduled to report into her office building for work. She then started on foot along the usual route to the southwesterly compound, across Lawton Way and the railroad trackage. At the point

where the trackage was torn up and undergoing reconstruction, she fell and received the injury for which she seeks benefits under the workmen's compensation act.

The superior court, in reversing the board's denial of respondent's claim, found as a fact that:

Plaintiff [respondent] was injured on premises used by the employer, The Boeing Company, for the business or work process in which the Boeing Company was then engaged, . . .

From this finding the court concluded as a matter of law that:

Plaintiff [respondent] was engaged in the course of her employment (as defined in RCW 58.08.013 [*sic*] at the time of her injury.

RCW 51.08.013 was enacted and incorporated into the workmen's compensation act by Laws of 1961, ch. 107, § 3, p. 1608.

This statute provides:

"Acting in the course of employment" means the workman acting at his employer's direction or in the furtherance of his employer's business *which shall include time spent going to and from work on the jobsite,* as defined in sections 1 and 2 of this act, *insofar as such time is immediate to the actual time that the workman is engaged in the work process in areas controlled by his employer, except parking areas,* and it is not necessary that at the time an injury is sustained by a workman he be doing the work on which his compensation is based or that the event be within the time limits on which industrial insurance or medical aid premiums or assessments are paid.

(Italics ours.)

RCW 51.32.015 and 51.36.040, being Laws of 1961, ch. 107, §§ 1 and 2, p. 1607, respectively, are, with the exception of what appears to be a slight typographical error,[1] identical

---

[1] ". . . The jobsite shall consist of the premises as are occupied, used or contracted for by the employer for the business of work process in which the employer is then engaged: . . ." (Italics ours.) RCW 51.36.040.

in the definition of jobsite. Taking the definition from RCW 51.32.015, the term is defined as follows:

The jobsite shall consist of *the premises as are occupied, used or contracted for by the employer* for the business or work process in which the employer is then engaged: . . .

(Italics ours.)

Appellants in challenging the superior court's finding of fact No. 7 and conclusion of law No. 2, contend that because respondent fell and was injured on the railroad trackage— private property over which Boeing asserted no control— she was not injured on the jobsite, *i.e.*, "the premises as are occupied, used or contracted for by the employer for the business or work process in which the employer is then engaged" (RCW 51.32.015), nor in "areas controlled by his [her] employer" (RCW 51.08.013). In short, they assert that respondent's industrial insurance coverage did not commence until she either passed through the gate in the fence surrounding the compound containing her office building or reached and entered the office building. Appellants otherwise concede that respondent was injured "immediate to the actual time that the workman [respondent] is engaged in the work process" (RCW 51.08.013).

Respondent, on the other hand, urges, as the trial court found, that Boeing in fact "used" that portion of the trackage adjacent to the compound gate as a pathway to, from, and between areas "controlled" by Boeing. Therefore, respondent argues, she was "acting in the course of employment" within the contemplation of RCW 51.08.013 at the time of her injury.

We agree with respondent's conclusion.

Generally speaking, the "going and coming" rule as originally applied in the field of industrial insurance denied recovery to a workman injured in the course of his journey either to or from his actual place of work. 8 W. Schneider's Workmen's Compensation § 1710, at 3 (Perm. ed. 1951). This rule proved too harsh in its application under all

circumstances involving an employee's travel to and from the actual location of his work and exceptions began to evolve, one of which permitted compensation for injuries received by a workman while proceeding on the employer's premises to or from the actual site of his work. 8 W. Schneider's Workmen's Compensation §§ 1710, 1712, at 3 and 29 (Perm. ed. 1951). This exception then gradually developed in recognition to the extent that it, in effect, supplanted and became the generally accepted "going and coming" rule. 1 A. Larson's Workmen's Compensation Law, §§ 15.00, 15.10, 15.11, at 195 (1968). Under this rule injuries occurring off the premises of the employer were not deemed compensable; however, again, limited exceptions emerged. One such exception concerned itself with injuries sustained by a workman while going to or coming from work over a route in close proximity to the employer's premises when the route was the only or customary route or means of ingress and egress to the premises, and when the route involved a particular hazard not shared by the public generally, *i.e.*, being struck by a train at an unguarded crossing, or negotiating a rough or torn up area likely to occasion falls. *Cudahy Packing Co. v. Parramore,* 263 U.S. 418, 68 L. Ed. 366, 44 S. Ct. 153, 30 A.L.R. 532 (1923); *Bountiful Brick Co. v. Giles,* 276 U.S. 154, 72 L. Ed. 507, 48 S. Ct. 221, 66 A.L.R. 1402 (1928); 1 A. Larson's Workmen's Compensation Law, § 15.13, at 199 (1968); 8 W. Schneider's Workmen's Compensation, § 1712(b), at 37 (Perm. ed. 1951). The rationale underlying this exception was that the hazard of the particular access route involved necessarily became one of the hazards of the employment, and accordingly arose out of and fell within the usual course of the employee's employment.

In the early years of workmen's compensation litigation in this state, this court indicated that an employee to be covered need only be within the course of employment when away from the plant or premises where he or she was employed. The employee was thus covered while on the premises of the employer. *Stertz v. Industrial Ins. Comm'n,*

91 Wash. 588, 158 P. 256, Ann. Cas. 1918B 354 (1916). This in turn led to coverage of an employee injured while fishing on his employer's premises immediately before he was to commence work. *Bristow v. Department of Labor & Indus.,* 139 Wash. 247, 246 P. 573 (1926).

In 1927, the legislature, by Laws of 1927, ch. 310, § 4, p. 834, imported into the workmen's compensation act the requirement that to be covered an industrial injury had to occur in the course of employment. Thereafter, in *McGrail v. Department of Labor & Indus.,* 190 Wash. 272, 67 P.2d 851 (1937), we observed, at 277:

> It is now the settled doctrine of this state that an injured employee, in order to come within the protection of the statute just quoted, must, at the time of his injury, have been in the course of his employment, whether on or off the premises of his employer. [Citing cases.]
>
> The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interests. [Citing cases.]

With some exceptions the test thus announced appeared to gradually become more strict and the extent of coverage more narrow, reaching a peak, so to speak, in *D'Amico v. Conguista,* 24 Wn.2d 674, 167 P.2d 157 (1946), a lunch-hour case, wherein this court added to the test of coverage the independent factor that at the time of injury the employee had to be in the actual performance of the duties required by the contract of employment. Under this rule, an employee injured when simply going to or coming from work, whether on or off the employer's premises, was denied coverage. *Purinton v. Department of Labor & Indus.,* 25 Wn.2d 364, 170 P.2d 656 (1946); *Cugini v. Department of Labor & Indus.,* 31 Wn.2d 852, 199 P.2d 593 (1948).

With occasional references to the harshness of the rule, this court continued to adhere to it until *Gordon v. Arden*

*Farms Co.*, 53 Wn.2d 41, 330 P.2d 561 (1958), when we tended to de-emphasize the independent factor erected in the *D'Amico* case and held that an employee, who donned a uniform on the employer's premises preparatory to commencing work and was injured in descending a stairway to the actual work site, was within the course of employment. In a somewhat similar case, however, we later distinguished the *Gordon* case and held that a construction worker, who was injured while proceeding on the employer's premises to his actual work site, was not within the course of his employment. *West v. Mount Vernon Sand & Gravel, Inc.*, 56 Wn.2d 752, 355 P.2d 795 (1960).

In the meantime, and in 1959 and early 1960, the subcommittee on labor of the Legislative Council met with representatives of labor and management. The minutes of their meetings, among other things, indicate that, at the very least, they were mutually agreed that industrial insurance coverage should be extended to employees going and coming from their actual work site while on the premises of the employer. We took note of their deliberations in *Miller v. St. Regis Paper Co.*, 60 Wn.2d 484, 374 P.2d 675 (1962). It is reasonable to assume that RCW 51.08.013, 51.32.015, and 51.36.040, in their present form, emerged from these meetings.

It is clear that the legislature, in enacting the pertinent legislation, intended to extend coverage to employees injured while going to and from work on the employer's premises, and to exclude from coverage injuries occurring to an employee in a parking area maintained either on or off the employer's premises. *Olson v. Stern*, 65 Wn.2d 871, 400 P.2d 305 (1965). In this sense, then, it would appear that, with the express parking area modification, the legislature enacted that which is now generally accepted as the "going and coming" rule. It is not, however, clear from the language of the statute that the legislature intended to exclude from coverage the exception to the rule to which we have heretofore alluded, namely, injuries occurring to an employee while traversing a hazardous route in close

proximity to the employer's premises which is the only practical route and/or one customarily and normally used by employees engaged in the immediate act of going to or coming from the actual situs of their work.

We are satisfied, however, that the legislature did not intend such an exclusion.

We reach this conclusion because by its enactment the legislature, with the express exception of injuries occurring in parking areas, extended coverage to injuries occurring (a) when the workman is acting at the employer's direction or in the furtherance of the employer's business, (b) while the employee is going to or coming from work on premises occupied, used or contracted for by the employer for its business, (c) immediate to the time the employee is to engage in the work process in areas controlled by the employer, (d) outside the fixed and compensated work time of the injured employee, and (e) regardless of whether the injury occurred within the time limits on which industrial insurance premiums or assessments are payable.

Given these statutory factors, and admitting that a narrow construction might produce a contrary result, we are convinced that the legislature did not intend to exclude from industrial insurance coverage an employee injured, immediate to the time of work, while in the process of going to or from an employer-designated parking area, lying a relatively short distance outside of what otherwise might be deemed work areas actually controlled by the employer, over and along the only practical, proximate and customarily used route, which route, under given circumstances, contained particular hazards likely to produce injuries and which hazards were not of a kind commonly shared by the general public. Under such circumstances, we agree with the trial court that the route which an employee is required to traverse, with the knowledge if not the express direction of the employer, to reach his or her actual work site falls within the contemplation of the legislative definition of "jobsite" as the premises "used" by the employer for the employer's business or work process, and

that in pursuing such a route the employee is "acting in the course of employment" within the intent of RCW 51.08.013.

The judgment is affirmed.

HUNTER, C. J., FINLEY, WEAVER, ROSELLINI, and HALE, JJ., concur.

McGOVERN, J. (dissenting)—I dissent. In 1959 and 1960 when management and labor "mutually agreed that industrial insurance coverage should be extended to employees going and coming from their actual work site," they did so because employees were *not* then covered while going and coming *on the premises controlled by the employer.*

The status of the law was exemplified by our holding in *West v. Mount Vernon Sand & Gravel, Inc.,* 56 Wn.2d 752, 355 P.2d 795 (1960) when we said that employment begins when a workman commences to earn his pay, and not earlier. The facts in *West* were that plaintiff arrived at his jobsite at about 7:30 a.m. but his work shift did not commence until 8 a.m. He was walking down a "pour" line on the jobsite toward his designated place of employment when he was struck from behind by a cement truck and injured. The question was whether he was then engaged in extra hazardous employment, *i.e.,* within the course of his employment. A jury found that plaintiff was injured before 8 a.m. and that he was not, therefore, engaged in the performance of his employment. We rejected the argument that plaintiff was, as a matter of law, engaged in the course of his work at the time of the accident. Plaintiff would not therefore have been entitled to relief under the Industrial Insurance Act.

To provide coverage for the worker under those circumstances, the legislature then passed Laws of 1961, ch. 107, § 3, which provides:

"Acting in the course of employment" means the workman acting at his employer's direction or in the furtherance of his employer's business which shall include time spent going to and from work on the jobsite, as defined in

sections 1 and 2 of this act, insofar as such time is immediate to the actual time that the workman is engaged in the work process *in areas controlled by his employer,* except parking areas, and *it is not necessary* that at the time an injury is sustained by a workman he be doing the work on which his compensation is based or *that the event be within the time limits on which industrial insurance or medical aid premiums or assessments are paid.*

(Italics mine.) That legislation effectively eliminated the "time of day" minute issue as an active ingredient in deciding the "course of employment" question for injured workmen. It also did something else—it provided that there should be industrial insurance coverage under certain circumstances for workmen injured while going or coming to work on the jobsite.

But the language of the statute was made clear and restrictive. It provided that such coverage was to be afforded the injured workman while going or coming to his job only when the injury which gave rise to the claim occurred on premises *controlled by the employer.*

That is not what happened here. The majority opinion fails to point out that the parking area where claimant had left her car was available for use to the general public; it also fails to state that the injury occurred on a public street. Contrary to the statement of the majority, the route taken by claimant was in fact one "commonly shared by the general public."

The employer did not create the hazardous condition; it did not add to the danger; it did not and could not select the employee's route of travel; it had no control over the area where the injury occurred; it could not alleviate the condition of danger. The injury occurred on a public way and claimant was not acting within the course of her employment.

I would reject her claim for benefits under the Industrial Insurance Act.

HILL and NEILL, JJ., concur with McGOVERN, J.