[No. 57468-0-I. Division One. February 20, 2007.]

CHARLES E. JOHNSON, *Appellant*, v. SAFEWAY, INC., ET AL., *Respondents*.

*Philip A. Talmadge* (of *Talmadge Law Group, PLLC*); *Anne Elizabeth Melley*; and *Corey L. Enders* (of *Vail, Cross-Euteneier & Associates*), for appellant.

*Elizabeth K. Reeve* (of *Reeve Shima, PC*); and *Robert M. McKenna, Attorney General*, and *Andy J. Simons, Assistant*, for respondents.

¶1 Cox, J. — A worker who is "acting in the course of employment" at the time of an injury is entitled to benefits under the Industrial Insurance Act (IIA), Title 51 RCW.[1] Here, Charles E. Johnson was sitting at a lunch table in Safeway's break room prior to starting his shift. He fell, injuring himself, when he got up from the table to get a glass of water. His activities at the time of his injury were neither at Safeway's direction nor in furtherance of its business. Accordingly, we affirm the superior court's summary dismissal of his claim.

¶2 Johnson began working at Safeway in 1999 as a courtesy clerk. His normal shift was from 11:00 AM to 3:00 PM, Monday through Friday. His customary practice was to

---

[1] RCW 51.32.010; RCW 51.08.013(1).

arrive about 30 minutes before his shift and wait in the lunchroom, reading magazines, before clocking in. Safeway's policy was that no workers were allowed to clock in before the start of their shifts.

¶3 On the day of his injury, Johnson arrived at work around 10:30 AM. His shift was to begin at 11:00 AM and he had not yet clocked in. He was sitting at a lunch table in the break room, relaxing and reading a magazine, when he decided to get up to get a glass of water. As he did, he fell and landed on his left side, injuring himself. He sprained his left ankle, hit his head on a cupboard door causing an abrasion, and landed on his left shoulder.

¶4 Johnson filed a claim under the IIA, which the Department of Labor and Industries (Department)[2] denied on the basis that Johnson was not acting in the course of employment while injured. He appealed the Department's order to the board, which affirmed the Department's order. In doing so, the board adopted the hearing officer's proposed decision and order as its own.

¶5 Johnson appealed the board's decision to the superior court. Safeway moved for summary judgment. Johnson also moved for summary judgment. The trial court granted Safeway's motion and denied Johnson's cross-motion.

¶6 Johnson appeals.

## ACTING IN THE COURSE OF EMPLOYMENT

¶7 Johnson argues that the trial court erred in granting Safeway's motion for summary judgment. We hold that the trial court properly granted Safeway's motion.

¶8 Judicial review of matters arising under the IIA is governed by RCW 51.52.110 and RCW 51.52.115.[3] Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to

---

[2] The Department is not a party to this appeal.

[3] *Ball-Foster Glass Container Co. v. Giovanelli*, 128 Wn. App. 846, 849, 117 P.3d 365 (2005).

judgment as a matter of law.[4] A material fact is one on which the outcome of the controversy depends.[5] We review a summary judgment order de novo, viewing the evidence in the light most favorable to the nonmoving party.[6]

¶9 " '[T]he guiding principle in construing . . . the [IIA] is that the [IIA] is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.' "[7] Nevertheless, for a worker to be eligible for compensation, the statute requires his or her injury to occur while the worker is acting within the course of employment.[8] Under the course of employment test, we consider factors such as time, place, and activity.[9]

¶10 Here, there are no genuine issues of material fact. It is uncontested on appeal that Johnson's injury occurred when he fell "at approximately 10:30 a.m. in [Safeway's] break room."[10] Moreover, it is also uncontested that "[he] was getting up to get a glass of water when he fell *while relaxing before his shift* that was scheduled to start at 11 a.m. that day."[11]

¶11 The legal issue here is whether Johnson's injury occurred while he was "acting in the course of employment," as that term is defined in RCW 51.08.013(1):

> [T]he worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall

---

[4] *Id.* at 850.

[5] *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

[6] *Ball-Foster*, 128 Wn. App. at 850.

[7] *Cochran Elec. Co. v. Mahoney*, 129 Wn. App. 687, 692, 121 P.3d 747 (2005) (first and second alterations in original) (quoting *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987)), *review denied*, 157 Wn.2d 1010 (2006).

[8] *Id.* at 692-93.

[9] 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 14.00, at 4-1 (1990).

[10] Finding of Fact 2, Appeal Bd. R. at 19.

[11] *Id.* (emphasis added).

*include time spent going to and from work on the jobsite*, as defined in RCW 51.32.015 and 51.36.040, insofar as *such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer*, except parking area. It is not necessary that at the time an injury is sustained by a worker he or she is doing the work on which his or her compensation is based or that the event is within the time limits on which industrial insurance or medical aid premiums or assessments are paid.[12]

¶12 In *In re Hamilton*,[13] the Supreme Court traced the evolution of the scope of this statute under the IIA, from its early years to the 1961 amendment that is codified at RCW 51.08.013. There, the court articulated a test for when this statute applies. The court stated that the legislature intended by its 1961 amendment that coverage under the IIA would exist:

(a) *when the workman is acting at the employer's direction or in the furtherance of the employer's business*, (b) while the employee is going to or coming from work on premises occupied, used or contracted for by the employer for its business, (c) immediate to the time the employee is to engage in the work process in areas controlled by the employer, (d) outside the fixed and compensated work time of the injured employee, *and* (e) regardless of whether the injury occurred within the time limits on which industrial insurance premiums or assessments are payable.[14]

¶13 There is no question that Johnson was on the "jobsite," as that term is defined by the statute. RCW 51.32.015 provides in relevant part:

The jobsite shall consist of the premises as are occupied, used or contracted for by the employer for the business or work process in which the employer is then engaged . . . .

Johnson was in the break area on Safeway's premises at the time of his injury. That qualifies as the jobsite.

---

[12] (Emphasis added.)

[13] 77 Wn.2d 355, 360-62, 462 P.2d 917 (1969).

[14] *Id.* at 363 (emphasis added).

¶14 It is also uncontested that the injury did not occur in a "parking area," which is an express statutory exclusion for purposes of coverage under the IIA. Thus, that statutory exclusion does not apply here.

¶15 The parties argue that the dispute is whether the injury occurred "immediate" to the start of the work process. For the reasons we state below, we conclude that whether the injury was "immediate" is not material for summary judgment purposes, and we need not decide that question in this case.

¶16 Neither RCW 51.08.013 nor any other relevant statutory provision defines the word "immediate" as it is used in that statute. The legislative history is not particularly helpful in determining what the legislature intended by the use of that word.

¶17 No Washington cases provide a satisfactory test to determine what the word means. Some Washington cases and board decisions have allowed coverage where an accident occurred as few as 8 and as many as 15 minutes before the "work process" began. But there is little or no analysis why these times are "immediate" for purposes of the statute.

¶18 The first prong of the test in *Hamilton* requires that the employee must be "acting at his or her employer's direction or in the furtherance of his or her employer's business" at the time of the injury. Here, the superior court judge correctly pointed to evidence in the record indicating that at the time of the injury, Johnson was relaxing before the start of his work and fell while going to get a glass of water. Johnson does not argue, and we cannot see, any relationship between this activity and the first prong of the test in *Hamilton*. We must conclude, as the board and the trial court did, that Johnson was not acting within the course of employment when injured.

¶19 Johnson argues that it is significant that Safeway knew and acquiesced in the activity in which Johnson was engaged at the time of his injury. We disagree.

¶20 As we have explained, the relevant test for purposes of the case before us is whether Johnson was acting at the direction of or in furtherance of the business of Safeway when injured. He cites no authority to support an argument that an employer's knowledge of or acquiescence to the activity in which he was engaged equates to what the first prong of the *Hamilton* test requires. Accordingly, Safeway's knowledge of or acquiescence to his activities is analytically irrelevant.

¶21 Johnson cites multiple cases from other jurisdictions that have provided coverage under similar circumstances. These cases are not helpful, chiefly due to the fact that they deal with differently worded statutes. Our task here is to apply the statute as the Washington legislature intended, not as some other legislature might have intended.

¶22 At oral argument, Johnson relied on *Remer v. Conrad*,[15] an Ohio Court of Appeals decision, to argue he was entitled to coverage. There, a store employee arrived at work 20 minutes early but did not clock in because the company had a policy prohibiting employees from clocking in more than 8 minutes before their scheduled shift.[16] Because the employee was early, she decided to return to her car to run an errand. While leaving, she slipped and fell on ice on the cart ramp at the store entrance, injuring herself.[17] The court affirmed the trial court's award of worker's compensation based on Ohio's statute, which allows compensation when an employee is injured within the "zone of employment."[18] The "zone of employment" rule focuses on the location of the employee at the time of the injury and is an exception to the coming and going rule, which generally precludes compensation for employees injured while traveling to and from work.[19] The court reason-

---

[15] 153 Ohio App. 3d 507, 2003-Ohio-4096, 794 N.E.2d 766.

[16] *Id.* at 508.

[17] *Id.* at 509.

[18] *Id.* at 510-12.

[19] *Id.* at 510.

ed that because the employee was injured on the cart ramp at the entrance to the store, which was owned and controlled by the employer, she was within the "zone of employment" and entitled to coverage.[20]

¶23 Because Washington does not have a "zone of employment" provision, *Remer* is not applicable. Johnson's claim fails because of the controlling test stated in *Hamilton*. He was not acting in the course of employment at the time of his injury.

¶24 We affirm the summary judgment order.

APPELWICK, C.J., and AGID, J., concur.