[No. 34947.  *En Banc.*  September 22, 1960.]

EZEKIEL WEST, *Respondent,* v. MOUNT VERNON SAND AND GRAVEL, INC., *Appellant.*[1]

[1]Reported in 355 P. (2d) 795.

*Randall, Danskin & Lundin* and *Washington & Wickwire* (*Paul J. Allison,* of counsel), for appellant.

*Ries & Kenison,* for respondent.

FINLEY, J.—This is a common law negligence action. Ezekiel West, employed as a common laborer by Howard S. Wright & Co., was injured on a construction project (a large eight-place airplane hangar) at Larson Air Force Base near Moses Lake. He is not seeking industrial insurance benefits under the State Workmen's Compensation Act. His claim is for civil damages against Mount Vernon Sand and Gravel, Inc., a subcontractor of his employer, Howard S. Wright & Co. Plaintiff claims that his injury was proximately caused by the negligence of a servant of the defendant subcontractor.

As a defense to this suit for damages, the defendant corporation has alleged contributory negligence. Defendant also claims third-party immunity under the Workmen's Compensation Act for the reason that the plaintiff was allegedly engaged in extrahazardous employment at the time of the accident. The accident occurred on May 10, 1957. A provision of the Workmen's Compensation Act which was then in effect (RCW 51.24.010) read as follows:

"Right of action against third party. If the injury to a workman is due to negligence or wrong of another not in the same employ, the injured workman . . . shall elect whether to take under this title or seek a remedy against such other . . . *Provided, That no action may be brought against any employer or any workman under this title as a third person if, at the time of the accident, such employer or such workman was in the course of any extrahazardous employment under this title. . . .*" (Italics ours.)

The Legislature repealed the above italicized immunity proviso in 1957 (Laws of 1957, chapter 70, § 23, p. 279). However, in *Hammack v. Monroe Street Lbr. Co.* (1959), 54 Wn. (2d) 224, 339 P. (2d) 684, a majority of this court held that this repeal is not to be applied retroactively. Consequently, under the statute as above quoted, the defendant is clearly immune from civil liability if the plaintiff

was in fact engaged in extrahazardous employment at the time of his injury. *Denning v. Quist* (1931), 160 Wash. 681, 296 Pac. 145; *Robinson v. McHugh* (1930), 158 Wash. 157, 291 Pac. 330.

At the trial, in order to support its claim of immunity, the defendant offered to prove that, prior to commencing this action, the plaintiff had filed a claim for industrial insurance benefits with the Department of Labor and Industries; that the claim had been allowed by the department, after a determination that the plaintiff was in the course of extrahazardous employment when he was injured; and that no appeal had been taken from this ruling. The trial judge rejected this offer, ruling that the department's action was not binding (*res judicata*) as to the plaintiff.

Following this ruling, testimony relating to the circumstances surrounding the accident was heard. The case was then submitted to the jury which found, in response to a special interrogatory, that the plaintiff was not engaged in extrahazardous employment at the time of the accident. The jury also returned a general verdict for the plaintiff; apparently, it found that the defendant's servant was negligent, and that the plaintiff in no way contributed to such negligence. The defendant moved for judgment notwithstanding the verdict and for a new trial, contending (a) that, under the evidence, the plaintiff was engaged in extrahazardous employment as a matter of law at the time of the accident; and (b) that, in any event, the plaintiff was guilty of contributory negligence as a matter of law. The trial court denied the motions and entered judgment for the plaintiff on the verdict. The defendant has appealed.

It is urged that the trial court erred: (1) in refusing to hold that the plaintiff was bound by the determination made by the Department of Labor and Industries; namely, that he was engaged in the course of extrahazardous employment at the time of the accident; (2) in refusing to hold that, under the evidence in this case, the plaintiff was, as a matter of law, (a) in the course of extrahazardous employment at the time of the accident, or (b) in the alternative, that plaintiff was guilty of contributory negligence.

■ We are convinced that the issue raised by the first assignment of error is controlled by the opinion in *Parker v. Pantages Theater Co.* (1927), 143 Wash. 176, 254 Pac. 1083. In the *Pantages* case this court held that an injured person who files a claim with the Department of Labor and Industries, and who is allowed industrial insurance benefits upon a determination by the department that the injury was incurred in the course of extrahazardous employment, may, nevertheless, reject such benefits and initiate a common law action for civil damages. The appellant's first contention is, therefore, without merit.

■ In contending that the respondent was engaged in extrahazardous employment, as a matter of law, at the time of the accident, the appellant relies on our recent decision in *Gordon v. Arden Farms Co.* (1958), 53 Wn. (2d) 41, 330 P. (2d) 561. In the present case respondent arrived at the construction job site at about 7:30 a. m., but there is no dispute that his work shift did not commence until 8:00 a. m. The evidence is in conflict as to whether the accident occurred prior to 8:00 a. m., or thereafter. It seems to us that, in answering the special interrogatory, the jury resolved this debatable factual question in favor of the respondent; namely, that he was injured prior to the start of his work shift at 8:00 a. m., and thus before he commenced to earn his pay, and prior to the performance of the duties of his employment. The *Gordon* case, *supra,* is distinguishable in that, although the plaintiff therein was injured before she had actually commenced to operate the machine which she was employed to operate; nevertheless, she was injured at the precise time when she was supposed to be at her machine.

■ The rule establishing the requisite proof to support a conclusion of contributory negligence as a matter of law was set forth by this court in *O'Brien v. Seattle* (1958), 52 Wn. (2d) 543, 327 P. (2d) 433, as follows:

"Contributory negligence cannot be conclusively established by a state of facts upon which reasonable and fairminded men may well differ. Contributory negligence can

be determined as a matter of law only in the clearest of cases. . . ."

█ The record in the instant case discloses that the respondent was injured when struck from behind by a "pre-mix" cement truck operated by the appellant's servant. At the time, respondent was walking down a "pour" lane toward his designated place of work. There is some evidence that the respondent had reason to anticipate that a "pre-mix" truck might be backing down the "pour" lane. However, the record also contains credible evidence that this particular truck was moving substantially faster than normal, and that the workmen who were ordinarily assigned to walk behind the truck to guide the driver were absent. There is, also, some evidence that the area on one side of the "pour" lane contained fresh cement, and the area on the other side contained impassable rubble, leaving only the "pour" lane for respondent's use. We, therefore, cannot say that the trial judge erred in allowing the jury to decide whether the respondent was guilty of contributory negligence.

In view of the conclusions we have reached, the judgment of the trial court must be affirmed. It is so ordered.

WEAVER, C. J., ROSELLINI, FOSTER, and HUNTER, JJ., concur.

ROSELLINI, J. (concurring)—I concur with the majority; but in view of the dissent, I find it necessary to further comment. I particularly disagree with the dissenting opinion that, under the evidence presented in the instant case, the crucial question of whether the respondent was in the course of his employment at the time of the accident, was improperly submitted to the jury. The dissent urges rather strongly that by approving the trial court's submission of this question to the jury, the majority have condoned what is denominated as "jury legislation." I agree of course that it is the function of the jury to decide questions of fact, and not to construe the law. However, in the instant case, *contra* to *Gordon v. Arden Farms Co.* (1958), 53 Wn. (2d) 41, 330 P. (2d) 561, relied upon by the dissent, there was a significant factual question to which there was conflicting

evidence; namely, at what time did the accident occur. Further, the record discloses that in instructing the jury on the issue of "course of employment," the trial court informed the jury that,

"An injury to an employee arises 'in the course of his employment,' when it occurs *within the period of his employment*; at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment." (Italics mine.)

Thus the jury was not presented with a question of law at all. Rather it was asked to decide a simple factual question (the time of the accident with relation to the time that the respondent's period of employment began) respecting which there was conflicting evidence. The court, exercising its proper constitutional function, declared the law and left the factual question to the jury. Several witnesses testified as to their estimates of the time the accident occurred. Depending upon which of these several witnesses the jury chose to believe, it could have permissibly found that the accident took place as early as 7:50 a. m., or ten minutes before the respondent was scheduled to start work.

Finally, based upon a finding that the accident did in fact occur as early as ten minutes before the respondent was scheduled to commence work, the jury—giving plain and ordinary meaning to the words used by the court in its instruction—could properly decide that the respondent's injury did not happen in the course of his employment for the reason that *it did not occur* "within the period of his employment." If the appellant had any objection to the instruction as given by the court, it could and should have excepted thereto. The appellant did not do so; hence the propriety of the instruction is not now before us. *Boyle v. Lewis* (1948), 30 Wn. (2d) 665, 193 P. (2d) 332.

WEAVER, C. J., and FOSTER, J., concur with ROSELLINI, J.

FOSTER, J. (concurring)—While I have signed both the court's opinion and Judge Rosellini's concurrence, it seems appropriate to remark that the decisions of this court respecting when a workman is in the course of his employ-

ment, or when he is not, have created nothing but chaos. Order may be established only by legislative rescue from the judicial morass. This difficulty is not indigenous to Washington. By 1946, England found itself in the same predicament which resulted in a plain act of the British parliament.[2]

MALLERY, J. (dissenting)—The decisive question in this case is whether or not the respondent was engaged in extra-hazardous employment at the time of his injury, for upon this issue hangs his right to maintain a common-law action. If he was not so engaged, it is immaterial whether his own employer or some one else caused his injury, for he has a common-law cause of action in either event. The Workmen's Compensation Act has specifically divested the trial court of its common-law jurisdiction if he was engaged in extrahazardous industry at the time of the injury. Neither a jury nor the parties by stipulation can restore the jurisdiction which was divested by the act. This is true notwithstanding the right of trial by jury.

It is true that Art. I, § 21, of the state constitution provides: "The right of trial by jury shall remain inviolate, . . ." This does not mean, however, that juries are arbiters of the law.

Art. IV, § 16, of the state constitution provides:

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, *but shall declare the law*." (Italics mine.)

---

[2]"It was not surprising therefore that the Workmen's Compensation Acts at once became the target for volleys of legal argument, or that miners who were injured by the shot-firing operations carried on in coal mines were held by the House of Lords not to be entitled to any compensation after all. Nor was the argument limited to 'the course of employment'; almost every phrase used in the Acts was scrutinised over and over again by the courts and a massive series of law reports devoted solely to the subject of workmen's compensation was built up over the years to the enrichment of the publishers and the edification of the profession. In numerous instances Parliament intervened in order to contradict the construction which the lawyers had fastened upon the Acts, but in 1946 Parliament lost patience altogether and decided that the only way to make the Acts work at all was to forbid lawyers to have anything to do with them." Harvey, The Advocate's Devil, chapter 5, p. 75, 88.

There is, perhaps, no principle of law so universally accepted as the one which makes questions of law the exclusive province of the court and relegates the jury's function to determining questions of fact.

The appellant challenged the jurisdiction of the court and, therefore, when it appears from the most favorable view of the evidence that there is no common-law jurisdiction over the case, the judgment cannot stand.

A question of fact arises as to the jurisdiction of a court to hear a case only when conflicting evidence is so divergent in theory and effect that the jury's finding either way would be sustained as being in accord with established law. No jury question is presented in this case because it is immaterial whether the respondent was injured before or after eight o'clock a. m. Under both versions of the facts, the respondent was employed in extrahazardous employment as a matter of law. We have so held.

The fact of engagement in extrahazardous employment, at the time of an injury, is not to be determined solely by reference to the clock unless there is an absence of acts and circumstances having a more direct bearing upon the question. This is the rationale of *Gordon v. Arden Farms Co.*, 53 Wn. (2d) 41, 330 P. (2d) 561, which is precisely in point. In that case, the worker had not yet punched the time clock, which, it had been contended, was a prerequisite to starting her workday.

The same contention, regarding the occurrence of the injury before the beginning of the workday, is made in this case, only it is here predicated upon the time in question being shortly before the customary start of the workday at eight o'clock a. m., on an ordinary clock.

Here, as in the *Gordon* case, the circumstances are controlling upon the question of the workman being engaged within the scope of his employment. They are, in brief, that the respondent was injured *on the site* of the construction project upon which he was employed. The concrete truck that injured him was in the act of delivering concrete for use in the construction of the building. The respondent was preceding it to the place where he was to perform his

assigned task in the dumping operation. Under these circumstances, reasonable minds could not believe that the respondent was engaged upon a private excursion of his own unrelated to his employment.

There has never been a case in this state or any other where a workman has been excluded from the benefits of the Workmen's Compensation Act under the circumstances of this case. The applicability of the act is fatal to the trial court's common-law jurisdiction.

The state constitution prohibits a court from turning its function of declaring the law over to a jury. That is the result, however, of permitting a jury to confer common-law jurisdiction on the court where there is no substantial dispute as to the facts of the case which bring it under the act. It is not the province of juries to rewrite the jurisdictional aspects of the Workmen's Compensation Act. It will not take them long to do so if they are so empowered by our decisions. The instant case, where the facts are not in substantial conflict and the applicability of the act is clear, is the opening wedge. But let a workman be injured while he is scratching himself and hereafter the jury can declare the law and find that the act did not further the employer's business and was, therefore, in the nature of a private excursion of the workman outside the scope of his employment. Common-law jurisdiction over the injury will thus be conferred upon the court. Indeed, no conceivable injury can occur in the future where in the eyes of a jury the workman could not exclude himself from the coverage of the act by simply testifying to some fleeting action of his, at the time of his injury, which was not performed on behalf of his employer.

Courts should face their responsibilities and not turn their constitutional functions over to juries. When juries can declare the law a new source of legislation will have been inaugurated. Judicial legislation sometimes raises a question of constitutional sanction, but jury legislation was beyond the pale until now.

I dissent.

HILL, DONWORTH, and OTT, JJ. (dissenting)—We concur in the result of the dissent and would dismiss the action.

December 1, 1960. Petition for rehearing denied.

