[No. 37201.    Department One.    March 18, 1965.]

ARTHUR A. OLSON et al., *Appellants*, v. SAM R. STERN et al.,
*Respondents.**

Kahin, Horswill, Keller, Rohrback, Waldo & Moren and
*Nicholas A. Maffeo*, for appellants.

*Hugh R. McGough*, for respondents.

*Reported in 400 P. (2d) 305.

HALE, J.—Arthur A. Olson, carpenter and maintenance man for the Boeing Company, moved and carried his tools about the plant area on a three-wheeled motor scooter. Sam R. Stern, an office and supervisory employee of Boeing's, parked his personal car in the company parking lot. Late one afternoon, while Olson was working and Stern was going home, their vehicles collided in the parking area. Olson brings this action for personal injuries. Stern claims immunity from suit as a fellow employee under the Workmen's Compensation Act. The question is precise.

Where an accident occurs in the parking area of an industrial plant involving a workman in the course of his employment, and another employee of the same company, who, having finished his day's work, is in the process of leaving the area, may the former maintain a common-law action against the latter for personal injuries, or is he limited to the remedies prescribed by industrial insurance?

We have this appeal on an agreed statement of facts, the salient parts of which are lucidly depicted in the affidavit of defendant Sam R. Stern. We set forth Mr. Stern's affidavit in its entirety:

"The statements herein are made on my personal knowledge. I am competent to testify to the matters stated herein.

"For more than the past fifteen (15) years, I have been an employee of the The Boeing Company. At all times mentioned herein, my job description was: 'Corporate Equipment Management Analyst', and I have been a member of the staff of the Director of Facilities, Headquarters Division. My duties of employment require me to participate in the management of machinery and equipment used in the workshops of the factory maintained by The Boeing Company, in King County, Washington, commonly known as Plant 2.

"The Boeing Company has complete control over my duties, hours of work, salary, and all other incidents of my employment. At all times pertinent hereto I have been a salaried employee. My working hours have been from 8:30 a.m. to 5:00 p.m. My working hours have been regularly reported to the Department of Labor and Industries as 'work men hours' under the provisions of the Workmen's Compensation Act, and the premiums required by law have

been paid to the Accident Fund and Medical Aid Fund for such work men hours.

"In front of building 2-40, Plant No. 2, of The Boeing Company, in Seattle, there is a large asphalt covered flat area known as the apron. Part of this apron is marked off by painted white lines and set aside as a parking area for supervisory personnel. Between Building 2-40 and the area reserved for parking of automobiles is an area approximately the width of a normal two lane street which was not reserved for parking, but which is used as an avenue of traffic. Forklift trucks, cranes, scooters, other types of material handling equipment, as well as vehicles going to and from the parking area, use this avenue of traffic regularly. The asphalt covered apron referred to herein is completely enclosed by a high cyclone fence. On April 6, 1962, the only entrance to the area was through a gate which was constantly guarded. Entrance by a private vehicle could be gained only by displaying to a guard at the gate an identification badge issued to all employees, containing a number, together with a special parking lot pass issued only to those employees entitled to park within the fenced in area of the Plant. Generally, only supervisory personnel were issued passes entitling them to park within the plant itself. Parking areas outside the fenced in area of the plant were furnished for non-supervisory personnel.

"My parking lot pass entitled me to park in the 'A' lot. This lot was about 400 feet from the building in which my office was located. There were no gates or fences between the lot and my office building. The distance from lot 'A' to the gate is approximately 300 yards. The gate opened onto East Marginal Way, a public highway. The fenced in area is owned, operated and controlled by The Boeing Company, and is part of the area commonly known as Boeing Plant 2.

"On Friday, April 6, 1962, I worked my normal shift at The Boeing Company. I had parked my car in Lot 'A' described above. I left my office about 5:00 p.m. and proceeded to my car. As I drove out of the area reserved for parking and into the avenue of traffic described above, I noticed Motor Scooter No. 538 owned by The Boeing Company proceeding toward me in the avenue of traffic. I stopped my vehicle. The motor scooter did not stop, but struck my automobile. The point of impact was in the avenue of traffic approximately six feet off the edge of the parking area.

"The driver of the motor scooter was Arthur A. Olson, the plaintiff herein. As he alleges in his complaint, Mr.

Olson was employed as a carpenter by The Boeing Company at the time of the accident. He was working the 2nd shift, from 4:00 p.m. to 12:30 a.m., at the time of the accident. He was driving the motor scooter at his employer's direction and in furtherance of his employer's business. In the motor scooter which Mr. Olson was driving were pipes and fittings suitable for work on the fence surrounding Boeing Plant No. 2.

"At the time of the accident, I had left my office for the day. I was about to drive my automobile through the guarded gate surrounding the plant onto East Marginal Way and home. The point of impact was inside the gate, approximately 300 yards from it.

"The motor scooters such as that driven by Mr. Olson have a 'box' built onto the front of them, and they are used for carrying tools and other small items of equipment from building to building inside The Boeing Plant. They are three-wheeled Cushman scooters driven by a small gasoline engine. A photograph is marked Exhibit A, attached to this affidavit, and by reference thereto made a part of this affidavit. The approximate point of impact is indicated by a small pile of dirt located in the approximate center of the picture. To the left is a painted white line, indicating the outer edge of the parking area referred to. To the right is Building 2-40, referred to. Near the center of the picture is the motor scooter referred to. Both the fire engine and the motor scooter are in the avenue of traffic, referred to above. The picture accurately represents what it purports to portray."

Plaintiffs accept this affidavit arguendo except to point out that the impact occurred at 5:15 p. m. on the Boeing parking area, and not outside the area as might possibly be inferred from defendant Stern's affidavit.

Defendant Sam Stern takes the position that, as an employee of the Boeing Company, he held the status of fellow workman to plaintiff Arthur Olson under the Workmen's Compensation Act; and this, therefore, being an action by a fellow workman, is barred under the provision of RCW 51.24.010. From a judgment of dismissal upholding this affirmative defense entered upon defendants' motion for summary judgment, plaintiffs bring this appeal.

Respondents favored us with a comprehensive history of the Workmen's Compensation Act, commencing with its

enactment in 1911, Laws of 1911, chapter 74, p. 345 (RCW 51.04.010, *et seq.*), and discussed the many amendments thereto in stating their position. Likewise, they have cited a number of landmark cases to substantiate their argument that the legislature has intended to bar actions by one workman against another, or, expressed another way, by one employee against a fellow employee. They say that this philosophy is implicit in our decision on this point. *Murphy v. Schwartz,* 142 Wash. 69, 252 Pac. 152; *Perry v. Beverage,* 121 Wash. 652, 664, 209 Pac. 1102, 214 Pac. 146; *Ross v. Erickson Constr. Co.,* 89 Wash. 634, 155 Pac. 153; *Peet v. Mills,* 76 Wash. 437, 136 Pac. 685. They point to our statement in *Jewett v. Kerwood,* 43 Wn. (2d) 691, 263 P. (2d) 830, that

"An injured workman entitled to compensation under that act has no right of action against anyone for his injuries except as that right is expressly preserved or created by that act, for it was the intention of the workman's compensation act to withdraw such causes of action from private controversy (citing authorities)."

We recognize the validity of counsel's argument and affirm the cases cited in support of it, but think, too, that the disposition of this case depends not upon the history of the statute or earlier cases interpreting it, but rather upon our understanding of the 1961 amendment, particularly to the section relating to parking areas. Laws of 1961, chapter 107, § 3, p. 1608.

Prior to 1961, RCW 51.24.010 authorized actions by a workman in the course of his employment against third-party tort-feasors in the following language:

"If the injury to a workman is due to negligence or wrong of another not in the same employ, the injured workman or, if death results from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this title or seek a remedy against such other, such election to be in advance of any suit under this section . . ."

*West v. Mount Vernon Sand & Gravel, Inc.,* 56 Wn. (2d) 752, 355 P. (2d) 795, upholds such an action.

Before the legislature explicitly referred to parking areas in connection with workmen's compensation, we held in *Purinton v. Department of Labor & Industries,* 25 Wn. (2d) 364, 170 P. (2d) 656, that, where a workman is injured going to or returning from work, in an area maintained by the employer for the parking of his employees' automobiles, the workman is not to be deemed in the course of his employment at the time of injury.

After our decision in *West v. Mount Vernon Sand & Gravel, Inc., supra,* involving the course of employment and third-party suits, the legislature sought to clarify these concepts by Laws of 1961, chapter 107, p. 1607. See, also, *Miller v. St. Regis Paper Co.,* 60 Wn. (2d) 484, 374 P. (2d) 675 (1962).

█ Manifestly, the legislature meant to allay any remaining doubts as to parking areas when, in 1961, it enacted RCW 51.08.013 (Laws of 1961, chapter 107, § 3, p. 1608), by expressly excluding them from the act, and disassociating them from the legislative definition of what constitutes a jobsite. RCW 51.08.013 reads:

" 'Acting in the course of employment' means the workman acting at his employer's direction or in the furtherance of his employer's business which shall include time spent going to and from work on the jobsite, as defined in RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the workman is engaged in the work process in areas controlled by his employer, *except parking areas,* and it is not necessary that at the time an injury is sustained by a workman he be doing the work on which his compensation is based or that the event be within the time limits on which industrial insurance or medical aid premiums or assessments are paid." (Italics ours.)

Jobsite as used in the above section is defined identically in RCW 51.32.015 and RCW 51.36.040, except for an obvious typographical but immaterial error in the latter section:

" . . . The jobsite shall consist of the premises as are occupied, used or contracted for by the employer for the business or work process in which the employer is then engaged . . . "

Unless, then, the parking area is a jobsite for the party claiming immunity from suit, we must accept the idea that the legislature intended to exclude accidents occurring in parking areas from the operation of the workmen's compensation statutes. Appellant Arthur Olson, being on shift, and driving a motor scooter loaded with the tools of his task as he went about his job, was, of course, then "acting in the course of employment" in accordance with RCW 51.08-.013, and the situs of the accident became as to him immaterial. He had assurance of workman's compensation.

Respondent Sam Stern, however, had finished his day's work; he had completed his tasks for the day, and in driving out of the *parking area* 15 minutes after leaving his office, he was neither "acting at his employer's direction" nor "in the furtherance of his employer's business" (RCW 51.08-.013), nor was he en route to a jobsite. On the contrary, at the time of impact, he was driving home. As to him, the place assigned to him for parking his car could not be said to constitute a jobsite under the workmen's compensation statutes, but rather it was, as the legislature described it, a parking area and, therefore, exempt from the workmen's compensation statutes.

That respondent Sam Stern and appellant Arthur Olson had the same employer became thus a matter of pure coincidence, a remote relationship giving rise to no legal rights and upon which no duties or immunities between them depended. Respondent Sam Stern, being at the time neither a workman in the course of his employment nor as to him in an area covered by workmen's compensation, was as a stranger both to appellant Arthur Olson and the Workmen's Compensation Act. So being, he derived no immunity from suit under the Workmen's Compensation Act. Appellants' action against him was accordingly maintainable as against a third party.

Reversed with directions to grant appellants a trial on the merits.

ROSELLINI, C. J., HILL, WEAVER, and OTT, JJ., concur.

May 14, 1965. Petition for rehearing denied.