[No. 8108–0–I.   Division One.   December 1, 1980.]

ITT CONTINENTAL BAKING COMPANY, *Appellant,* v. WILLIAM H. SCHNEIDER, *Respondent.*

*Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo. App. 1980); *Travelers Ins. Co. v. Pac,* 337 So. 2d 397 (Fla. App. 1976).

*Bergman, Bauer & Freise* and *William Bauer,* for appellant.

*McElmeel, Schultz & Doyle* and *Lee E. Schultz,* for respondent.

DURHAM, J.—The plaintiff, ITT Continental Baking Company (ITT), appeals from the entry of summary judgment in favor of William H. Schneider, and denial of its own motion for summary judgment. The trial court affirmed a decision of the Board of Industrial Insurance Appeals that Schneider was, as a matter of law, within the course of employment when he was injured.

The facts are agreed: Schneider has been employed for 19 years as a baker by ITT. ITT's building is located at 434 Aurora Avenue North, bound by Aurora Avenue to the west, Republican Avenue to the north, and Dexter Avenue to the east. To the south it is bound by an alley which connects Aurora and Dexter Avenues. There are public sidewalks owned by the City of Seattle (City) abutting the building and adjacent to Aurora, Dexter and Republican Avenues.

The diagram on the following page, considered by the

Board of Industrial Insurance Appeals (Board) and the trial court, is helpful.

ITT did not provide a designated parking lot so employees parked their vehicles on surrounding public streets in whatever space was available. ITT knew that employees driving to work would park on the public streets or in a public parking lot located on Republican Avenue. Entrance to the building was gained by walking along the various sidewalks abutting the building to the entrance door located on the south side of the building. That entrance door was the only means of access to the building by employees.

On the evening of his injury, January 7, 1978, Schneider arrived, as usual, approximately 15 minutes before the start of his 10 p.m. work shift. He left his vehicle, crossed Republican Avenue, and proceeded in a southerly direction along the Dexter Avenue sidewalk. The route Schneider took was one frequently used by employees going to or coming from work.

As Schneider walked along the Dexter Avenue sidewalk, he passed some receiving doors, as well as some City garbage dumpsters parked alongside of the building. A bakery pan truck owned by ITT was positioned along the outside of the building on the sidewalk just to the south of the garbage dumpsters. As Schneider approached the bakery pan truck, it swung out from the building, rolled across the sidewalk into his path, struck him, and caused him to trip and sustain injuries. Pan trucks were positioned at various times along the outside of the building.

Schneider filed a claim for compensation which was upheld by the Department of Labor and Industries, and by the Board. ITT then appealed to King County Superior Court, which entered summary judgment in Schneider's favor.

The question presented by this appeal is whether Schneider was acting in the course of employment within the meaning of RCW 51.08.013. The parties have devoted

most of their argument to a discussion of *In re Hamilton,* 77 Wn.2d 355, 462 P.2d 917 (1969), the only Washington case construing the relevant passages of that statute.

In *Hamilton,* a Boeing employee was injured when she fell while crossing a railroad track which, along with a public road, separated two fenced–in parcels on which Boeing's buildings were located. The employee had driven to work and parked in a designated parking lot in the unfenced portion of one of the parcels. In order for her to reach her work station, in the building within the fenced portion of the other parcel, it was necessary for her to enter that parcel through a gate in the fence. She had to cross the road and tracks in order to reach this gate and was injured as she did so.

The court discussed the evolution of the generally accepted "going and coming" rule, which "permitted compensation for injuries received by a workman while proceeding on the employer's premises to or from the actual site of his work." *Hamilton,* at 360. An extension to this rule developed, which permitted compensation for an injury

> sustained by a workman while going to or coming from work over a route in close proximity to the employer's premises when the route was the only or customary route or means of ingress and egress to the premises, and when the route involved a particular hazard not shared by the public generally, *i.e.,* being struck by a train at an unguarded crossing, or negotiating a rough or torn up area likely to occasion falls.

*Hamilton,* at 360.

In Washington, however, a statute enacted in 1927 limited compensation to injuries suffered by a workman while actually performing work for his employer. Thus, an employee who was injured while on his employer's premises, but not actually engaged in performing his assigned task, was not entitled to compensation.

In reaction to the harsh results frequently reached under this statute, the legislature enacted RCW 51.08.013:

"Acting in the course of employment" means the worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall include time spent going to and from work on the jobsite, as defined in RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, except parking areas, and it is not necessary that at the time an injury is sustained by a worker he or she be doing the work on which his or her compensation is based or that the event be within the time limits on which industrial insurance or medical aid premiums or assessments are paid. The term shall not include time spent going to or coming from the employer's place of business in commuter ride sharing, as defined in RCW 46.74.010(1), notwithstanding any participation by the employer in the ride-sharing arrangement.

The *Hamilton* court stated that the statute clearly extended coverage to a worker injured while on the employer's premises, even if he was merely coming from or going to his jobsite, and clearly excluded coverage for an injury incurred in a parking lot maintained either on or off the premises.

■ However, the court said, the statute was not clear as to whether coverage was extended to include the special hazard exception set forth above, for injuries incurred on areas near to, but not a part of, the employer's premises, by employees going to or coming from work. It resolved this problem by giving a liberal interpretation to the definition of "jobsite" set forth in RCW 51.32.015, and incorporated by reference in RCW 51.08.013. Jobsite was defined as "the premises as are occupied, used or contracted for by the employer for the business [of] work process in which the employer is then engaged". RCW 51.32.015.

The *Hamilton* court concluded that the area on which the employee had been injured was "used" by Boeing under the statutory definition, and, therefore, was part of the "jobsite."

[W]e are convinced that the legislature did not intend to exclude from industrial insurance coverage an employee injured, immediate to the time of work, while in the process of going to or from an employer–designated parking area, lying a relatively short distance outside of what otherwise might be deemed work areas actually controlled by the employer, over and along the only practical, proximate and customarily used route, which route, under given circumstances, contained particular hazards likely to produce injuries and which hazards were not of a kind commonly shared by the general public. Under such circumstances, we agree with the trial court that the route which an employee is required to traverse, with the knowledge if not the express direction of the employer, to reach his or her actual work site falls within the contemplation of the legislative definition of "jobsite" as the premises "used" by the employer for the employer's business or work process, and that in pursuing such a route the employee is "acting in the course of employment" within the intent of RCW 51.08.013.

*Hamilton,* at 363–64.

ITT first argues that, unlike the employee in *Hamilton,* Schneider was not injured in an area controlled by ITT. Rather, he was injured on a public sidewalk owned and controlled by the City. Therefore, ITT contends, the special hazard exception recognized in *Hamilton* does not apply.

Contrary to ITT's contention, however, the court's holding in *Hamilton* is not based on the fact that Boeing *controlled* the area in which its employee was injured. Such a conclusion cannot be reconciled with the fact that RCW 51.08.013 expressly refers to "areas controlled by his or her employer" in one place, yet adopts by reference a definition of "jobsite" that does not speak in terms of control. The *Hamilton* court expressly found that "Boeing in fact '*used*' that portion of the trackage adjacent to the compound gate as *a pathway to, from, and between areas 'controlled' by Boeing.*" (Italics ours.) *Hamilton,* at 359.

We next consider if the risk of injury caused by the pan trucks was "a particular hazard not shared by the public

generally . . ." *Hamilton,* at 360. The employee in *Hamilton* was injured when she fell on the tracks between the two Boeing parcels, which section, at the time, was torn up for repair work. This particular risk was one shared by those members of the public crossing the track at that particular point. The tracks were situated on a public way, and the public therefore had a right to cross there. But because the tracks were surrounded by Boeing property, the most likely reason to cross them at that point would be to gain entrance into one of the Boeing compounds. Thus, only Boeing employees and members of the public doing business with Boeing would be likely to cross the torn–up section of tracks.

In contrast to the circumstances in *Hamilton,* many members of the public presumably use the sidewalks adjacent to ITT's bakery without intending to enter it. Nevertheless, there is strong support in the case law for the proposition that when the source of the injury suffered by an employee while standing on a public sidewalk arises from the employer's business, the special hazard exception should apply, even though the risk is shared by those members of the general public merely passing by.

In *Freire v. Matson Navigation Co.,* 19 Cal. 2d 8, 118 P.2d 809 (1941), a janitor employed by a steamship arrived at the ship's pier by taxi. He stepped out onto a 62–foot–wide bulkhead, which constituted the only means of reaching the pier. As he did so, he was struck by a car owned by his employer and driven by a fellow employee. Although the bulkhead was not company property and was open to the public, it was used for many company purposes, including passage for trucks loading and unloading cargo, and for persons having business with the ship. The court found the injury compensable:

> In the instant case the plaintiff by reason of his employment was subjected to the risks arising on the bulkhead peculiarly and to an abnormal degree. At the time of his injury plaintiff was upon the bulkhead solely in the line of his duty as an employee. . . . The injury to

plaintiff occurred upon the only practical means of access to the employer's premises. The hazard to which he was subjected when he arrived upon the bulkhead was created by his employer, its agents and those with whom it did business. . . . Under these circumstances, the hazard was one directly connected with the employment and, . . . was one arising out of and in the course of plaintiff's employment.

(Citations omitted.) *Freire*, at 13.

In *Guzman v. Victor Mach. Exch.*, 61 App. Div. 2d 871, 402 N.Y.S.2d 237 (1978), the employee left the employer's building and proceeded along a public sidewalk parallel to the building for about five steps. Her way was blocked by a truck backed up on the sidewalk with its tailgate down on a loading platform in the side of the building. After the tailgate was raised, she mounted the steps to the loading platform and was walking across it when the tailgate suddenly fell and struck her. The court found that although the injury took place off the employer's premises, the truck dock was a hazard caused by her employment, and awarded compensation.

In *Leatham v. Thurston & Braidich*, 264 App. Div. 449, 35 N.Y.S.2d 887 (1942), an employee was walking to work on the public sidewalk adjacent to his employer's building. His way was blocked by a truck backed up against a loading platform in the side of his employer's building. Instead of walking out into the street to get around the truck, the employee tried to climb between the truck's cab and its trailer. He fell and was injured as he tried to do so. The court found the injury compensable:

When the accident happens from the dangers of the premises and the limits of the business there conducted, it is as though it happened upon the premises themselves. A relationship which brings the accident within the range of the employment is all that is required.

*Leatham*, at 451. *See also Husted v. Seneca Steel Serv., Inc.*, 41 N.Y.2d 140, 359 N.E.2d 673, 391 N.Y.S.2d 78 (1976) (citing *Leatham* with approval, and discussing at length the rationale for the special hazard rule); *Singer v.*

*Rich Marine Sales,* 25 App. Div. 2d 801, 271 N.Y.S.2d 514 (1966) (premises include portion of public sidewalk used by employer for storage); *Workmen's Compensation Appeal Bd. v. L.L. Stearns & Sons,* 20 Pa. Commw. Ct. 244, 341 A.2d 543 (1975) (pipe installed by employer on public sidewalk to protect shrubbery from loading trucks is part of premises); *Nelson v. St. Paul,* 249 Minn. 53, 81 N.W.2d 272 (1957) (injury to schoolteacher struck by baseball as she walked past school playground on public sidewalk arose out of employment).

We believe that application of the special hazard exception to the case at bar is well within the spirit of *Hamilton.* The *Hamilton* court deliberately gave a broad reading to RCW 51.32.015, while admitting that "a narrow construction might produce a contrary result . . ." *In re Hamilton,* 77 Wn.2d 355, 363, 462 P.2d 917 (1969).

The source of the injury to Schneider—the collision with the pan truck—was one directly related to his employment. Thus, the "jobsite," as defined in RCW 51.32.015, would extend to that part of the sidewalk being "used" by ITT's pan trucks. *Hamilton,* at 363.

Finally, ITT argues that the route Schneider took was not the only customary or practical one available to him. Other employees could, and did, use the Aurora Avenue sidewalk to reach the employees' entrance. In response, Schneider suggests that although the route followed in *Hamilton* may, in fact, have been the only one available, there is no reason that the special hazard exception should be limited to those facts.

The *Hamilton* opinion states in one place that the exception governs injuries incurred on the "only *or* customary route", (italics ours) *Hamilton,* at 360, and, at another, that it applies to injuries happening on the "only practical route and/or one customarily and normally used by employees . . ." *Hamilton,* at 363. In one of the cases cited by the *Hamilton* court, *Bountiful Brick Co. v. Giles,* 276 U.S. 154, 72 L. Ed. 507, 48 S. Ct. 221, 66 A.L.R. 1402 (1928), compensation was awarded to an employee struck

by a train, even though he crossed the track at an unguarded crossing, rather than an available guarded one.

Whether the presence of an alternative route affects the availability of the special hazard exception will depend on the circumstances. Some cases stress the habitual use of one route with the employer's consent; others place more emphasis on the relative safety of the two routes. *Compare Johannsen v. Acton Constr. Co.,* 264 Minn. 540, 119 N.W.2d 826 (1963) *with Henderson's Portion Pak v. Cotera,* 294 So. 2d 309 (Fla. 1974). A good formulation of the test to be applied is set forth in 1 A. Larson, *Workmen's Compensation* § 15.13, at 4–33 (1978):

> If an alternate route is available, and if it is substantially more remote or more inconvenient, the special hazard exception to the premises rule will usually be applied. Conversely, if a reasonably safe and convenient route is available, and if the employee chooses a substantially more dangerous route, the exception will usually not be applied.

(Footnotes omitted.)

The Board of Industrial Insurance Appeals found that, as in *Hamilton,* the route chosen by Schneider was one he was "required to traverse with the knowledge, if not the express direction of the employer . . ." It did not consider whether Schneider could have used a safer route, nor did the parties address that issue. It *appears* from the record that Schneider could have reached the employees' entrance by either of two routes of approximately equal length, both of which were customarily used by ITT employees. However, it is not clear whether the operation of the pan trucks was restricted to the Dexter Avenue sidewalk. If it was, then Schneider's failure to use the equally convenient Aurora Avenue sidewalk may preclude application of the special hazard exception. At any rate, we would have to indulge in speculation to determine these questions given the status of the record.

We reverse the judgment and remand the cause to the

trial court with instructions to refer it to the Board of Industrial Insurance Appeals for a further hearing and determination in accordance with this opinion. Both parties should be permitted to present evidence to the Board on the issue of the relative safety and availability of the alternative route. *Olympia Brewing Co. v. Department of Labor & Indus.*, 34 Wn.2d 498, 208 P.2d 1181 (1949).

CALLOW, C.J., and JAMES, J., concur.

Reconsideration denied February 4, 1981.

Review denied by Supreme Court April 23, 1981.