[No. 7221-1-II.   Division Two.   September 9, 1985.]

MARILYN J. HEIM, *Appellant,* v. LONGVIEW FIBRE COMPANY, *Respondent.*

*Tom O'Neill* and *Putka & Styve,* for appellant.

*Willard Walker* and *Walker, Dowell, Hunter & Twining,* for respondent.

ALEXANDER, J.—Marilyn J. Heim appeals a superior court order reversing a determination of the Board of Industrial Insurance Appeals that her husband's death was covered by industrial insurance. We affirm.

Jerry Heim was employed by the Longview Fibre Co. as an electrician. On May 14, 1979, he was killed when his motorcycle collided with another employee's (Opsahl's) pickup truck near "the Gate" at the entrance to Longview Fibre Co. plant in Longview, Washington. The accident occurred at approximately 7:45 a.m. as Heim was leaving the plant after working the graveyard shift. Heim had ridden the motorcycle to work and parked it throughout his work shift near the plant electrical shop, rather than in an established employee parking area. "The Gate" is located at the intersection of Fibre Way Extension, an interior plant road, and Fibre Way, a county road. Fibre Way is the main access road to the plant, apparently used by employees, business invitees, and company vehicles.

Employee Opsahl's pickup struck Heim's motorcycle as Opsahl, who was entering the plant on his way to work, was making a left turn onto another interior plant road. Impact apparently occurred on Fibre Way, 4 feet 4 inches beyond the Longview Fibre Co. property line. Heim was killed instantly.

The Department of Labor and Industries rejected Mrs. Heim's claim for widow's benefits, finding that Mr. Heim had not been acting in the course of his employment at the time of death. The Board of Industrial Insurance Appeals, in a split decision, reversed the Department of Labor and Industries and granted the claim. The Superior Court, reviewing the case de novo without a jury, reversed the Board of Industrial Insurance Appeals and reinstated the order of the Department of Labor and Industries, rejecting the claim. Mrs. Heim appeals from the superior court order.

■ Appellate review of superior court decisions in industrial insurance cases is, as in many civil cases, limited to whether the trial court's findings of fact are supported by the evidence, and whether its conclusions of law flow

therefrom. *Bayliner Marine Corp. v. Perrigoue,* 40 Wn. App. 110, 114, 697 P.2d 277 (1985).

The broad issue before this court on appeal concerns whether the employee, Jerry Heim, was covered by our state's Industrial Insurance Act as a worker "injured in the course of . . . employment."[1] The Legislature has defined "acting in the course of employment" to include "time spent going to and from work on the jobsite, . . . insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, *except parking areas, . . .*" (Italics ours.) RCW 51.08.013. The term "jobsite" is defined as "premises as are occupied, used or contracted for by the employer for the business or work process in which the employer is then engaged: . . ." RCW 51.32.015.[2]

Longview Fibre argued to the trial court that Heim was not "acting in the course of employment" even though he was going from work. The trial court agreed, reasoning that the case of *Olson v. Stern,* 65 Wn.2d 871, 400 P.2d 305 (1965), settled this issue. In *Olson,* the worker was injured when struck by an off-duty worker's car in an established parking area. Longview Fibre suggests that analysis of *Olson* indicates that the court found the worker not covered by industrial insurance, not because he was in a parking area, but because he was no longer acting in the course of employment. The trial court, relying on *Olson,* found that although Heim did not customarily park in an assigned "parking area," he was no longer acting in the course of employment once he left his parking area.[3]

---

[1]RCW 51.32.010 provides in part:

"Each worker injured in the course of his . . . employment, or his . . . family or dependents in case of death of the worker, shall receive compensation in accordance with this chapter, . . ."

[2]RCW 51.36.040 is identical to RCW 51.32.015 with the exception of what appears to be a slight typographical error. *In re Hamilton,* 77 Wn.2d 355, 358, 462 P.2d 917 (1969).

[3]Finding of fact 7 reads as follows:

We believe that the trial court and respondent have incorrectly construed the ruling in *Olson.* There is some support for their reading of *Olson* in *Taylor v. Cady,* 18 Wn. App. 204, 566 P.2d 987 (1977), which interpreted *Olson* as restricting the definition of "course of employment." However, we believe that the better view of *Olson* is that the worker was not covered because the accident occurred in a "parking area," and, therefore, under the express provision of RCW 51.08.013, there was no coverage, despite the fact that he may still have been on the jobsite while leaving work. In other words, but for the express parking area exception, the worker in *Olson* would have had coverage because he was acting in the course of employment while on the employer's premises under the "going and coming" rule. In the case of *In re Hamilton,* 77 Wn.2d 355, 462 P.2d 917 (1969), our Supreme Court, in discussing *Olson,* stated the following:

> It is clear that the legislature, in enacting the pertinent legislation, intended to extend coverage to employees injured while going to and from work on the employer's premises, and to exclude from coverage injuries occurring to an employee in a parking area maintained either on or off the employer's premises. *Olson v. Stern,* 65 Wn.2d 871, 400 P.2d 305 (1965). In this sense, then, it would appear that, with the express parking area modification, the legislature enacted that which is now generally accepted as the "going and coming" rule.

*Hamilton,* 77 Wn.2d at 362. While it is clear then, that the Legislature intended to *exclude* injuries in "parking areas" from coverage, it did not say, as the trial court did here, that coverage *ended* once the worker entered the parking area before departing for home. As Heim's fatal injury did not occur in a parking area, the "parking area" exception to the "going and coming" rule does not apply.

---

"From and after the time Mr. Heim mounted his motorcycle at the place where it was parked and thereafter proceeded toward home, his day's work was finished, and he was no longer acting at his employer's direction, or in furtherance of his employer's business. In short, he was not acting within the course and scope of his employment."

■ The more precise issue, then, is whether the fatal injury to Heim occurred "on the jobsite." We know from the record that the mishap which led to Heim's injury and death did not occur on Longview Fibre's plant premises. To be sure, the fatal impact occurred very close to the property line, but was nevertheless off company property.[4] We do not believe that the point of impact in this case occurred on premises that can be considered part of the employer's jobsite. The point 4 feet 4 inches beyond Longview Fibre's property line cannot be considered as premises "occupied, used or contracted for by the employer *for the business or work process* in which the employer is then engaged: . . ." (Italics ours.) RCW 51.32.015; RCW 51.36.040. The area where the accident occurred was clearly not an area "occupied" or "contracted for" by the employer, Longview Fibre. Neither was it "used" in any sense in the employer's business or work process. It was used by employees in going to and coming from work but that fact alone does not make it a "jobsite."[5]

■ This conclusion, and the determination that Heim's death did not occur on plant premises does not, however, end our inquiry. A location where a worker is injured which

---

[4]Heim's counsel has argued to this court that the rear end of Heim's motorcycle must have been on Longview Fibre's premises at the time of impact since the point of impact was only 4 feet 4 inches over the property line. The trial court made no such finding. Further, even assuming the vehicle had a length greater than 4 feet 4 inches, we know nothing of the angles of the vehicles at impact and, therefore, could have no opinion about whether a portion of the vehicle was on the premises of Longview Fibre at impact.

Appellant has also referred us to testimony that impact became unavoidable while Heim was still on company premises. There is no finding to that effect, although the appellant has assigned error to the absence of such a finding. We do not believe that this fact is determinative, as actual impact occurred off the premises.

[5]Heim's counsel urges on this court that the term "jobsite," defined in RCW 51.32.015 and RCW 51.36.040, includes areas "controlled" by the employer, citing *In re Hamilton, supra.* He argues that the area where the accident occurred was "controlled" by Longview Fibre, thus permitting a finding of coverage. We are, of course, restricted by the language of the statute and any changes in the statute are for the Legislature to determine.

is outside of what might be considered the jobsite, as commonly described, can be viewed as a "jobsite" within the statutory definition, if it is along a so–called "hazardous route" to the work site. That concept of long standing has the effect of extending coverage under the Industrial Insurance Act to workers who are injured or killed while traversing a hazardous route, in close proximity to the employer's premises, which is the only practical route and/or one customarily and normally used by employees engaged in the immediate act of going to or coming from the actual situs of their work. *ITT Continental Baking Co. v. Schneider,* 27 Wn. App. 732, 621 P.2d 1294 (1980). Our Supreme Court described the reason for the rule as follows:

> The rationale underlying this exception was that the hazard of the particular access route involved necessarily became one of the hazards of the employment, and accordingly arose out of and fell within the usual course of the employee's employment.

*Hamilton,* 77 Wn.2d at 360.

Therefore, in a case where the injuries are sustained on a "hazardous route," the place of the accident, although physically off the employer's premises, is considered part of the "jobsite." Our Supreme Court explained the rule as follows:

> [Where] injuries [were] sustained by a workman while going to or coming from work over a route in close proximity to the employer's premises when the route was the only or customary route or means of ingress and egress to the premises, and when the route involved a particular hazard not shared by the public generally, . . .
>
>   . . .
>   . . . [u]nder such circumstances, we agree with the trial court that the route which an employee is required to traverse, with the knowledge if not the express direction of the employer, to reach his or her actual work site *falls within the contemplation of the legislative definition of "jobsite" as the premises "used" by the employer for the employer's business or work process,* and that in pursuing such a route the employee is "acting in the

course of employment" within the intent of RCW 51.08-.013.

(Italics ours.) *Hamilton,* 77 Wn.2d at 360, 363–64.

Does the "hazardous route" exception apply to this case?[6] We think not. The trial court's findings, which are supported by substantial evidence, foreclose any such conclusion. As we have observed, the accident leading to Heim's death took place in very close proximity to the employer's premises while Heim was traversing a route that apparently was the only practical route and/or the one customarily used by employees engaged in going to and coming from work at Longview Fibre's plant. We observe also that the trial court found that the incident occurred "immediate to time of work." There is no finding or evidence, however, that the route was "hazardous" or that the injury was caused by any hazardous condition related to the employer's business. Here, it seems apparent that the accident was *not* due to any hazard related to the conduct of Longview Fibre's business. At this stage, we can only presume that the collision was caused by negligence of one of the drivers. The trial court very aptly summarized the absence of hazard and causation in this way:

> It seems to me that the dissenting [Board member's] opinion . . . correctly assessed the cause of the accident as being due to the negligence of one or both of the parties to the collision and that there was, in fact, nothing about the road surface, nature of the intersection, lack of or placement of centerline striping, or whatever, which in any way caused or contributed to the accident.

We believe that, before compensation can be awarded under the hazardous route exception, the hazard must have

---

[6]There is some confusion caused by the term "hazardous route exception." When the concept was developed, it was an exception to the general rule of noncoverage for injuries received by an employee coming to or going from work, even while on company premises. "Hazardous route" coverage was thus an exception to an exclusion, and as in *In re Hamilton, supra,* and *ITT Continental Baking Co. v. Schneider, supra,* applied off premises. As the statutory "coming and going" rule now covers on–premises injuries, the hazardous route concept is really an extension of coverage in limited situations. *See Hamilton,* 77 Wn.2d at 359–63.

caused or contributed to the injury. *See* 1 A. Larson, *Workmen's Compensation* § 15.13(b), at 4–30 to –32 (1984), which states the following concerning the hazardous route concept:

> But it was never the intention behind this exception to mark out an off–premises area, merely because it is a normal access route, and then invest it with all the characteristics of the premises for course of employment purposes. Suppose, for example, that a particular road, alley or sidewalk could meet the test of being the sole or normal access route to the plant. Suppose also that two railway tracks ran across that route near the plant gate. Now assume that the employee suffered an unexplained fall, under circumstances that would have rendered it compensable under the decisions of the jurisdiction if it had ' happened during active employment. Would it be held compensable? It would not, although injury from being struck down by a railway engine would be. The extended course of employment based upon a special hazard in the access route is valid *only for that hazard.*

(Footnote omitted.) Both *In re Hamilton, supra,* and *ITT Continental Baking Co. v. Schneider, supra,* recognize and rely on this rule. In *Hamilton,* 77 Wn.2d at 363, the court said the hazard must be likely to *produce* injury. At pages 357–58, the court pointed out:

> At the point where the trackage was torn up and undergoing reconstruction, [Hamilton] fell and received the injury for which she seeks benefits under the workmen's compensation act.

In *Schneider,* 27 Wn. App. at 735, the court commented:

> As Schneider approached the bakery pan truck, it swung out from the building, rolled across the sidewalk into his path, struck him, and caused him to trip and sustain injuries.

The accident in *Schneider* occurred because of the work process; Schneider was struck outside the bakery by plant equipment. Hamilton's accident was not caused by the employer's work processes, but by conditions of which the employer knew in an area within the statutory definition of jobsite.

In this case an accident occurred off the plant premises and did not arise from the employer's business. Although obviously a tragic consequence, it could have occurred anywhere. We do not believe that the hazardous route exception should be extended to provide coverage in such cases and therefore affirm the trial court.

REED, A.C.J., and PETRICH, J., concur.

Review denied by Supreme Court November 22, 1985.