[No. 32740-6-II. Division Two. January 24, 2006.]

CARLA OTTESEN, as Personal Representative, Respondent, v. FOOD SERVICES OF AMERICA, INC. ET AL., Petitioners.

---

*Phillip C. Raymond* and *Jessica B. Jensen*, for petitioners.
*Stephen L. Bulzomi* (of *Messina / Bulzomi*), for respondent.

¶1 PENOYAR, J. — Food Services of America (FSA) and Darrell Corgatelli appeal the grant of summary judgment in favor of Carla Ottesen, widow of deceased Bernard Ottesen, asserting that her claims are barred by the exclusive remedy provision of Washington's Industrial Insurance Act (IIA), Title 51 RCW. Ottesen contends that her suit falls within the "parking area" exception of the IIA because the staging yard where Ottesen was injured was a "mixed-use" area, Ottesen was not performing work-related duties, and, as to him, the yard was a parking lot. Because the uncontradicted evidence was that there were both job activities and employee parking in the staging yard, we affirm and hold that the staging yard was a "mixed-use" area as a matter of law. We remand on the issue of damages only.

FACTS

¶2 Bernard Ottesen was employed in the "high-pick area" at FSA. Clerk's Papers (CP) at 144. His job consisted

of driving a forklift inside the warehouse to put away and receive products. Ottesen did not work outside of the warehouse; he worked only inside.

¶3 Darrell Corgatelli was employed as a "hostler" at FSA. CP at 42. His job consisted of driving a "yard goat"[1] in the staging yard/trailer yard adjacent to the warehouse. He did not work in the warehouse.

¶4 The staging yard/trailer yard at FSA extended from the west side of the warehouse. It was used for storing trailers and for loading and unloading at FSA's warehouse loading dock, also located on the west side of the warehouse. The designated employee parking lot was located in the northwest corner of the yard and a yellow crosswalk extended across the yard to the warehouse entry. A mechanic shop was also in the yard. Mechanics parked personal vehicles on the south end of the shop, in the staging yard. Also, employees occasionally parked personal motorcycles in the yard near the shop. Additionally, employees parked personal vehicles next to the warehouse entry, in the staging yard. The only factual dispute is whether the parking area next to the warehouse was used for parking during employees' entire shifts or just for temporary parking.

¶5 Ottesen arrived at work on May 8, 2003, and parked his car in the parking lot. He was walking toward the warehouse in the crosswalk when a yard goat driven by Corgatelli fatally injured him. Corgatelli was driving a yard goat, moving trailers around the yard when he hit Ottesen. The trailer brakes of the yard goat were inoperable, and Corgatelli was not able to stop the vehicle to avoid hitting Ottesen.

¶6 Ottesen's personal representative sued FSA and Corgatelli for personal injuries and damages in tort. FSA moved for summary judgment, arguing that the decedent was covered by Washington's IIA, RCW 51.32.010, and

---

[1] A "yard goat" is a type of truck tractor used to move trailers.

therefore limited to workers' compensation benefits. Ottesen filed a cross motion for partial summary judgment, arguing that (1) Ottesen's suit fell within the "parking area" exception of the IIA and (2) FSA was liable for Ottesen's death as a matter of law.

¶7 The trial court granted summary judgment to Ottesen because the area where Ottesen was injured was a "mixed-use" area and because FSA and Corgatelli were liable as a matter of law for Ottesen's injuries. Report of Procedings at 32. FSA filed an interlocutory appeal of the summary judgment order, only assigning error to the trial court's conclusion that the area where Ottesen was injured was a "mixed-use" area. It did not appeal the ruling on liability as a matter of law.

## ANALYSIS

### I. STANDARD OF REVIEW

¶8 On review of an order for summary judgment, this court performs the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). The standard of review is de novo and all facts are considered in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

### II. THE INDUSTRIAL INSURANCE ACT AND THE "PARKING AREA" EXCEPTION

¶9 Washington's IIA provides the exclusive remedy for a worker injured "in the course of his or her employment" and immunizes employers from civil tort actions for workplace injuries. RCW 51.32.010. *See also Judy v. Hanford Envtl. Health Found.*, 106 Wn. App. 26, 31, 22 P.3d 810, *review denied*, 144 Wn.2d 1020 (2001). "Acting in the course of employment" is defined in the statute:

> "Acting in the course of employment" means the worker acting at his or her employer's direction or in the furtherance of his or her employer's business which shall include time spent going to

and from work on the jobsite, as defined in RCW 51.32.015 and 51.36.040, insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, *except parking area*.

RCW 51.08.013(1) (emphasis added).

■ ■ ¶10 The "parking area" exception to workers' compensation benefits under the IIA is not an absolute bar to coverage. *Puget Sound Energy, Inc. v. Adamo*, 113 Wn. App. 166, 169, 52 P.3d 560 (2002). Usually, when employees are in parking areas, they are only parking their cars, not performing work-related duties. However, some employees *do* perform work-related activities in parking areas and should be covered by the IIA. Therefore, the initial question in "parking area" cases is: What is the primary use of the area where the accident occurred? This is a factual inquiry. From this initial factual inquiry, different categories of cases emerge—"pure" parking area cases, "jobsite" area cases, and "mixed-use" area cases. If the primary use of an area is only for employee parking, it is a "pure" parking area and the IIA does not apply. If the primary use of an area is only for job-related activities, it is a "jobsite" and the IIA does apply. If there are parking and job activities in the area, it is a "mixed-use" area. In a "mixed-use" area, the IIA may apply.

III. "PURE" PARKING AREA CASES

■ ¶11 In "pure" parking area exception cases, the question is whether an area meets the statutory definition of parking area. If so, then the IIA never applies. *See Boeing Co. v. Rooney*, 102 Wn. App. 414, 10 P.3d 423 (2000) (a grassy area adjacent to a parking lot was not a "parking area"); *Madera v. J.R. Simplot Co.*, 104 Wn. App. 93, 15 P.3d 649, 36 P.3d 1072 (a drive-through lane that was used only by off-duty employees to temporarily park while they picked up paychecks was not a "parking area"), *review denied*, 144 Wn.2d 1002 (2001); *Univ. of Wash. v. Marengo*, 122 Wn. App. 798, 95 P.3d 787 (2004) (a stairwell where employee

slipped and fell was a means of getting to and leaving the parking area and not a "parking area").

¶12 This is not a "pure" parking area case as in *Madera* and *Marengo*. FSA admits that employees occasionally park near the shipping warehouse and at the south end of the staging yard/trailer yard near the mechanic shop. Even though the parking by the warehouse entrance might only be temporary, there is also parking scattered throughout the entire yard. If a box is drawn around the entire staging yard, there are facts in the record that lead an ordinary person to conclude that the area was both a "parking area," and a "jobsite." There is evidence of parking in FSA's staging yard/trailer yard, and it is undisputed that job activities also occurred there. Therefore, this area is not purely a parking area. The parties do not dispute either that Ottesen was not performing work duties when he was hit and fatally injured or that Corgatelli was performing work duties when he hit and fatally injured Ottesen. Under this set of facts, the staging yard/trailer yard is a "mixed-use" area as a matter of law.

## IV. "MIXED-USE" AREA CASES

¶13 In "mixed-use" cases, the *Olson* test applies, and the IIA covers employees performing job-related activities; it does not cover employees *not* performing job-related activities. *See Olson v. Stern*, 65 Wn.2d 871, 877, 400 P.2d 305 (1965). In *Olson*, an accident occurred in the parking area of an industrial plant between an off-shift employee on his way home after work and an on-shift employee performing his work duties. The court held that the IIA did not bar the off-shift employee's civil suit because the IIA did not apply. *Olson*, 65 Wn.2d at 877. The court granted him a trial on the merits. *Olson*, 65 Wn.2d at 877. The situs of the accident was a jobsite "as to" the on-shift employee because he was performing job duties (and the IIA applied) but not "as to" the off-shift employee because he was not performing work duties. *Olson*, 65 Wn.2d at 877. "[T]he place assigned to [the off-shift employee] for parking his car could not be

said to constitute a jobsite . . . but rather it was, as the legislature described it, a parking area and, therefore, exempt from the workmen's compensation statutes." *Olson*, 65 Wn.2d at 877.

¶14 In *Bolden v. Department of Transportation*, 95 Wn. App. 218, 974 P.2d 909 (1999), *review denied*, 139 Wn.2d 1023 (2000), an off-shift employee approached his vehicle after work and was struck by an employee driving a Department of Transportation (DOT) vehicle. The accident occurred in an area where personal and DOT vehicles were parked and where the DOT vehicles were prepared for their duties. The court held that since the injured employee was not using the parking lot as his jobsite, or in furtherance of his employer's business purpose, the parking lot exclusion applied and he was not covered by workers' compensation. *Bolden*, 95 Wn. App. at 223. In *Adamo*, the court explained *Bolden*:

> The [IIA] expressly excludes parking areas from the Act and disassociates them from the legislative definition of what constitutes a jobsite. *Olson v. Stern*, 65 Wn.2d 871, 876, 400 P.2d 305 (1965).
>
> The parking area exception is not, however, an absolute bar to industrial insurance coverage. The appropriate inquiry is whether the injury occurred while the employee was acting in the course of his employment. If so, the situs of the accident is, as to him, immaterial. *Olson*, 65 Wn.2d at 877. In *Olson*, the worker was held to be covered, though in a parking area, because he was on shift and driving a motor scooter loaded with tools. But where an injury occurred in a mixed-use area that was used both for parking and to prepare vehicles for work duties, the injured employee was held not to be covered because when the injury occurred he was not performing work-related duties. As to him, the location where the injury occurred was a parking area. *Bolden v. Dep't of Transp.*, 95 Wn. App. 218, 223, 974 P.2d 909 (1999).

*Adamo*, 113 Wn. App. at 169.

¶15 Ottesen was merely walking to work at the warehouse at the time of the accident. Under *Olson*, as to

Ottesen, the "mixed-use" situs of the accident was a "parking area" because he was not performing work duties. But Corgatelli was driving a yard goat in performance of his work duties at the time of the accident. As to Corgatelli, the situs of the accident was a "jobsite" and the IIA would apply to any injury Corgatelli suffered. Viewing the evidence in a light most favorably to FSA, the "parking area" exception of the IIA applies to Ottesen, precluding coverage and allowing Ottesen's civil tort suit.

V. THE POLICY OF THE IIA AND WORKERS' COMPENSATION

¶16 "Washington's IIA was the product of a grand compromise in 1911. Injured workers were given a swift, no-fault compensation system for injuries on the job. Employers were given immunity from civil suits by workers." *Birklid v. Boeing Co.*, 127 Wn.2d 853, 859, 904 P.2d 278 (1995) (citing *Stertz v. Indus. Ins. Comm'n*, 91 Wash. 588, 590-91, 158 P. 256 (1916)). Under the IIA, employees may receive less than full tort damages in exchange for avoiding the expense and uncertainty of litigation. *Minton v. Ralston Purina Co.*, 146 Wn.2d 385, 390, 47 P.3d 556 (2002).

¶17 Here, the IIA does not apply because Ottesen was injured and died from a risk that was not part of his job at FSA. Ottesen worked inside the warehouse and was not exposed to the risks of the staging yard/trailer yard. If his death had been caused from an accident inside the warehouse—from an object that fell off a high shelf—this case would fall within the "grand compromise" of the IIA and workers' compensation. *Birklid*, 127 Wn.2d at 859. Here, the accident occurred outside of Ottesen's work area from a hazard not part of his work duties. The grand compromise is not offended if Ottesen is allowed to proceed with his negligence action.

¶18 We affirm the trial court's judgment and remand the case for further proceedings.

VAN DEREN, A.C.J., and HUNT, J., concur.

Reconsideration denied March 3, 2006.

Review denied at 158 Wn.2d 1014 (2006).